ROBERTS *v.* ROBERTS, ADMINISTRATRIX.

Opinion delivered November 5, 1917.

FRAUDULENT CONVEYANCES—DEPRIVING INTENDED WIFE OF DOWER.— Where a man or woman conveys away his or her property for the purpose of depriving the intended husband or wife of the legal rights and benefits arising from such marriage, equity will avoid such conveyance or compel the person taking it to hold the property in trust for, or subject to the rights of the defrauded husband or wife.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; reversed.

*J. F. Wills,* for appellant.

1.   The sole purpose of the conveyance was to defraud plaintiff of her dower rights, and the fraud was participated in by both grantor and grantee.   The deed is void.   191 S. W. 963; 40 Cyc. 1164; 10 Col. App. 443; 14 Cyc. 944; 9 R. C. L. 591; 1 Scribner on Dower, 588; 4 Pom. Eq. Jur., § 1383; 7 N. D. 475; 41 L. R. A. 258; 219 Ill. 146; 43 Ky. (43 Mon.) 215; 39 Am. Dec. 501.   See also, 65 Am. St. 350; 134 Ind. 350; 96 N. W. 900; 63 Oh. St. 125; 6 N. J. Eq. (2 Halst.) 515; 60 W. Va. 9; 1 Ann. Cas. 856; 54 How. Pr. 228; 10 Hun 194; 37 S. C. 285.

2.   The fact that the conveyance is to children will not render it valid, if it covers all or a greater part of the grantor's property.   71 Ky. (8 Bash.) 201; 35 Mich. 415; 15 Phil. 339; 14 Vt. 107.

3.   The mere fact that a voluntary conveyance is made on the eve of marriage, without the knowledge of the intended spouse, is conclusive proof of fraudulent intent.   Cases *supra;* 5 Jones Eq. (58 N. C.) 258.

4.   The decisions are not confined to cases where the conveyances were voluntary.   64 Wis. 301; 25 N. W. 88; 254 Ill. 281; 94 N. E. 563; 45 Am. Rep. 75, 79; 120 Ark. 500.

5.   As to inadequacy of consideration, see 33 Ark. 328; 20 Cyc. 441; 59 Mo. 537.

*Mehaffy, Reid & Mehaffy* and *W. C. Adamson,* for appellees.

1.   John W. Roberts helped to accumulate the property.   The consideration is $100 and *other considerations.*   There was no fraud, but an act of justice.

2.   Where two or more persons jointly pay the consideration and the title is taken in the name of one only, a resulting trust will arise in favor of the one not named in proportion to the consideration paid.   39 Cyc. 133; 64 Ark. 155; 101 *Id.* 451.   Such trust can be established by evidence full, clear and convincing.   The consideration was adequate and no fraud shown.   No intention to defraud the intended wife of dower was shown.   45 N. W. 603; 8 L. R. A. 814; 14 Cyc. 944.

3. Mere inadequacy of consideration is not even constructive fraud. 2 Pom. Eq., § 926-7. The inequality must be so great as to shock the sense of justice. 6 Am. & E. Enc. L. 701; 92 Ark. 248. Or fraud must be proven. Fed. Cases No. 6638, 17068; 91 Ill. 288; 20 N. J. Eq. 433; 76 Va. 744. The deed was for a valuable consideration and there was no fraud or undue influence, or mental incapacity. 116 Ill. 340, 6 N. E. 428; 91 Mich. 618; 52 N. W. 58; 1 Humphr. (Tenn.) 459.

4. The wife can not complain where, in good faith, as here, only a reasonable provision is made for children, although she is ignorant and the effect is to decrease her dower. 90 Ky. 1; 76 Wis. 567; 5 Kan. App. 285; 57 Iowa 15; 134 Ind. 350. See also, 21 Kan. 521; 13 Me. 124; Story Eq. Jur., § 273, 23 Gratt 102, 123; 3 Del. Chy. 99, 110-13; 41 L. R. A. 258. The contract of marriage does not debar a man from all control of his property, or tie up his estate. 21 Kan. 527; 34 *Id.* 740; 57 Iowa 15; 56 Kan. 1.

5. A settlement merely concealed may be vindicated on the ground it was dictated by equitable or meritorious considerations. 2 Beav. 522; 1 Vern. 408; 2 P. Wis. 675. Each case must be determined by its own circumstances. 1 Myl. & K. 610; 43 Pa. 67; 71 Pa. 386. It is for the court to determine whether a fraud on the marital rights was intended. Bigelow Fraud 51; 64 Wis. 307; 84 Ky. 527; 57 Iowa 15; 6 New Eng. Rep. 707; 8 L. R. A. 874, 95.

6. Fraud must be proven, it is never presumed. 120 Ark. 500; 99 *Id.* 45; 63 *Id.* 22.

7. The findings of the chancellor are conclusive unless clearly against the preponderance of the evidence. 67 Ark. 200; 91 *Id.* 69; 95 *Id.* 482; 84 *Id.* 429; 100 *Id.* 370.

SMITH, J. This was a suit brought by appellant to set aside a deed which she alleged was executed in fraud of her marital rights. She alleged that she was the widow of Thomas Roberts, whom she married on January 12, 1911, and who died June 4, 1913. It was alleged that prior to their marriage Roberts had owned

seven lots in the town of Carlisle, in Lonoke County, and that the ownership of said property was, in part, the inducement for her marriage. That Roberts, during their marriage negotiations, represented to her that he owned that property, and that on January 11, 1911, the day before the marriage, Roberts, without her knowledge or consent, and in fraud of her rights, executed a deed to said property to one John W. Roberts, which was without consideration, or without adequate consideration. It was further alleged that her husband continued to keep and use said property until his death, and that she remained in ignorance of the conveyance until after his death. John W. Roberts died on March 13, 1913, and the suit was brought against Estelle Roberts, as widow, and Agnes Roberts, as infant child and only heir at law. There was a prayer for the cancellation of the deed and the assignment of dower.

The answer contained a general denial of all the allegations of the complaint.

The chancellor found against the plaintiff and dismissed the complaint for the want of equity, and this appeal has been duly prosecuted.

In support of the prayer of the complaint, appellant offered the following testimony. She testified that when she and Mr. Roberts were talking about getting married, she said, "Mr. Roberts, you are old, and do you think you can take care of us the rest of our lives?" and he said, "Certainly; I own ten lots in Carlisle," and he showed her the deed therefor, and he also said, "I have got a little money, but I am not going to show it to you; and I draw a pension of $36 quarterly." He showed her the deed on Monday before they were married on Thursday. Roberts owned a lot on Main street in Argenta, and had a small store with stock of goods worth about $200, on which he owed $80. About two weeks before Roberts' death, she asked him to move to Carlisle, and he said "All right," and she looked for the deed and could not find it, and asked him about it, and he said, "Well, I kinda made it over to John, but I am going to

get it back. It is no trouble to get it back. I have just kinda made it over." She did not learn of the deed sought to be canceled, however, until after the death of her husband, who continued paying the taxes on the lots and collected the rent amounting to $6 per week, until he died. She testified that her husband had raised John Roberts, but had never adopted him; that he gave John Roberts $200 at one time, and $25 several times after her marriage.

The deed recited a consideration of $100 and "other considerations," and was recorded twelve days after its execution.

The testimony as to the value of the lots varies widely, appellant putting the value as high as $1,600, while a disinterested witness places it at a thousand. But the witness whose opinion is evidently most dependable places the value of the lots at $700.

Mrs. Estelle Roberts testified that the $100 was actually paid, and there is testimony that John Roberts, both before and after his marriage, assisted Thomas Roberts in his store, and had lived with him from infancy until after his marriage as a member of the family and had given Thomas Roberts his earnings as a boy. John Roberts was born in 1878, and a note of that fact was made by Thomas Roberts in his family Bible. John Roberts called Thomas Roberts "Pa," and called Mrs. Roberts "Ma," and both of them referred to him as "Son," and he was commonly spoken of as the son of Thomas Roberts and his wife, by his acquaintances. Some effort was made to show that John Roberts had been legally adopted, but it is not contended that the evidence establishes that fact. A Mrs. Styrne testified that she, too, lived with Mr. and Mrs. Roberts for fourteen or fifteen years as a servant and as a member of the family, and called them "Pa" and "Ma," and that John did but little work, and did not contribute to Mr. Roberts as much as his living cost. The preponderance of the evidence on that question, however, appears to be otherwise, and, although the testimony does not show that the boy was adopted, it does show that Mr.

Roberts entertained great affection for him and treated him like a son, and gave him money from time to time. Indeed, while the testimony shows the payment, in some form, of the $100 recited in the deed—the circumstances and details of the payment not being shown—yet, it also appears that after appellant's marriage, Mr. Roberts had given John $200 and other smaller sums in addition.

The same difference of opinion in regard to the value of the remainder of the property (the Argenta property) exists as was shown in regard to the value of the lots in controversy. There was testimony that Mr. Roberts had refused $3,500 for the property, and that it was worth that sum of money; but it was shown that a half interest was sold at a public sale for $825, and the other half interest at a private sale for $1,250.

There is no intimation in the record that any undue or improper influence was exercised over Mr. Roberts to induce the execution of the deed. On the contrary, it appears to have been a deliberate act, prompted, no doubt, by the affection he entertained for the boy he had reared, then grown to be a man thirty-three years old. But the deed, if permitted to stand, divests Mr. Roberts' estate of about one-fourth of its value and, consequently, and proportionately, reduces appellant's dower interest. If the $100 was in fact paid in money, it represented only about one-seventh of the value of the property, and although the deed is absolute on its face, there was no change of possession. Mr. Roberts continued to pay the taxes in his own name and to collect the rent on the little house which stood on one of the lots, this being all the income derived from said property. John Roberts was present when the deed was executed, and had known for two months prior thereto that Thomas Roberts was to be married to appellant, and he became a party to a transaction which resulted in leaving to his grantor the beneficial interest in the property during the lifetime of the grantor, and yet, if allowed to stand, one that deprives the grantor's wife of her dower after his death.

In 9 Ruling Case Law, page 591, it was said: "That the wife's right of dower is a substantial property right, entitled to protection by the courts, is perhaps most strikingly shown in action by her to set aside conveyances made by the husband for the purpose of defeating her expectation (though not yet vested even as an inchoate right) of dower. If shortly before a marriage, the future husband conveys away his real estate without consideration, and without the consent or knowledge of his betrothed, with the purpose and result of unfairly depriving her of dower, the courts will set aside the conveyance as a fraud upon her rights; and even the fact that it was made for a valuable consideration will not save it, if the grantee participated in the intent to defraud the wife." Numerous cases are cited which support the text.

In our recent case of *West* v. *West,* 120 Ark. 500, we stated our own views of this subject in the following language: "This brings us to a consideration of the law governing cases of this character. The general rule is that if a man or woman convey away his or her property for the purpose of depriving the intended husband or wife of the legal rights and benefits arising from such marriage, equity will avoid such conveyance or compel the person taking it to hold the property in trust for or subject to the rights of the defrauded husband or wife. Perry on Trusts and Trustees (6 Ed.) Vol. 1, section 213; Bishop on the Law of Married Women, Vol. 2, section 350; *Smith* v. *Smith,* 2 Halstead Ch. (N. J.) 515; *Leach* v. *Duvall,* 8 Bush. (Ky.) 201; *Dearmond* v. *Dearmond,* 10 Ind. 191; *Collins* v. *Collins,* 98 Md. 473, 103 Am. St. Rep. 408, and case note."

Applying the doctrine of that case to the facts of this, we have concluded that the chancellor's finding is contrary to the preponderance of the evidence, and that the deed in question was executed for a grossly inadequate consideration and for the purpose of defeating the dower right which otherwise appellant would have had.

The decree is, therefore, reversed and the cause will be remanded with directions to the court below to enter a decree canceling the deed in so far as it affects appellant's dower as in fraud of her dower rights, and to assign dower therein.