CHRONISTER v. JERNIGAN, BANK COMMISSIONER.

4-5088

Opinion delivered June 20, 1938.

*Robert Bailey, J. M. Smallwood* and *Hays & Wait,* for appellants.

*Moore, Burrow & Chowning, Daily & Woods* and *S. S. Jefferies,* for appellees.

HUMPHREYS, J. This is a suit to cancel deeds from W. J. Chronister to his two sons and daughter to all of his lands in Pope county as fraudulent conveyances, and to subject them to the payment of an initial indebtedness to the Union Trust Company of Little Rock, Arkansas, of $30,000, and an additional indebtedness of $10,000 to the First National Bank of Fort Smith, Arkansas; and to set aside a deed from A. N. Falls to Roy Falls to lands he inherited from his father in Pope county, Arkansas, as a fraudulent conveyance and to subject them to the payment of said indebtedness. The Bank Commissioner of Arkansas who took over the affairs of the Farmer's Bank & Trust Co., when it closed its doors on December 3, 1931, intervened in the suit alleging that W. J. Chronister and A. N. Falls were each indebted to said bank in large sums and that the deeds made by them were fraudulent conveyances and prayed that the deeds be set aside and the lands described in them subjected to the debts they owed the Farmer's Bank & Trust Company. Conveyances between other parties to other lands were also sought to be canceled as fraudulent, but the chancery court refused to cancel the other deeds, and no appeal has been prayed from its refusal to do so. The appeal to this court is from the decree of the chancery court canceling the deeds from W. J. Chronister to his sons and daughter, and from A. N. Falls to his brother Roy Falls.

No question is raised as to the indebtedness or to the amounts of the judgments rendered thereon against W. J. Chronister and A. N. Falls in favor of the Union Trust Company, and the First National Bank and the Bank Commissioner. The only question raised or involved on this appeal is whether the conveyances were fraudulently made to defeat the collection of the notes executed by W. J. Chronister, A. N. Falls, and others to the Union Trust Company, First National Bank and the indebtedness they owed to the Farmer's Bank & Trust Company, when it closed its doors.

Appellants contend that the three banks were subsequent creditors of W. J. Chronister and A. N. Falls to the conveyances sought to be canceled, and that even if

the conveyances were made without consideration to near relatives, and even though the effect of the conveyances rendered them insolvent and execution proof, no presumption of fraud can be indulged, but actual fraud must be proved, and that the burden rests upon the banks to prove actual fraud.

In support of this contention learned counsel cites six Arkansas cases beginning with *May* v. *State National Bank*, 59 Ark. 614, 28 S. W. 431, and ending with *Conine* v. *Mize,* 189 Ark. 92, 70 S. W. 2d 845. They quoted from each case cited and as illustrative of the point they make we incorporate herein their quotation from the case of *Home Life & Accident Co.* v. *Schichtl,* 172 Ark. 31, 287 S. W. 769, as follows: "The line as to the presumption of fraud is thus clearly drawn between attacks by prior existing creditors and subsequent creditors. The statute (now Pope's Digest, § 6071) protects creditors of both classes, but there is a distinction as to the presumption in the rules of evidence in the two classes of cases. As to subsequent creditors there is no presumption, and the burden of proof as to fraud rests upon the attacking creditor, whilst in the case of existing creditors there is a presumption of fraud arising from a voluntary conveyance by the insolvent debtor."

They then say that a preponderance of the evidence in the instant case does not show that at the time W. J. Chronister executed the deeds on the 28th and 30th of June, 1930, to his sons and daughter, and that at the time A. N. Falls executed a deed on December 18, 1930, they did not do so with the intent to defraud creditors. They further state that on the dates the deeds were executed neither of the grantors conveyed all their property to the grantees in the deeds, and call our attention to the fact that on the dates W. J. Chronister conveyed his lands to his sons and daughter the undisputed evidence shows that he had on deposit in the bank $5,000, $9,000 in life insurance, $10,000 in notes, $3,000 in bank stock in the Farmer's Bank & Trust Company, and two good automobiles, which he did not assign to his children, and that according to the undisputed evidence A. N. Falls had property left of the value of $25,000 after he conveyed

the lands he inherited from his father to Roy Falls, his brother. They argue that since W. J. Chronister and A. N. Falls owed no debts when they made these conveyances, and that each retained some of their property they had a right to give the property away, and in doing so perpetrated no fraud on subsequent creditors, and that no presumption of fraud can be indulged against them in favor of their subsequent creditors. This would be true if the deeds they executed had been recorded at or near the time they executed the deeds, but the undisputed evidence reflects the deeds they executed to their relatives without consideration were withheld from the record and not recorded until after they became insolvent and after the Farmer's Bank & Trust Company had closed its doors without sufficient assets to pay its creditors. The record also reflects that W. J. Chronister was a very rich man at the time he conveyed the bulk of his property to his sons and daughter, and that A. N. Falls was a man of considerable wealth at the time he conveyed the property he inherited from his father to his brother, and that when they became indebted to the Union Trust Company, and the First National Bank they made statements showing their net wealth based upon their former holdings without disclosing to said banks that they had conveyed the major portions of their property to their near relatives. The record also shows by a preponderance of the evidence that the Farmer's Bank & Trust Company, which was being managed and dominated by A. N. Falls and in which he and W. J. Chronister were stockholders and directors, and in which A. N. Falls was an officer was in a bad condition prior to the time they executed the deeds sought to be canceled, and that they borrowed the money from the Union Trust Company and First National Bank to create a reserve in case a run should be made upon the bank by the depositors. The record also reflects that in addition to conveying all of his real estate to his sons and daughter W. J. Chronister transferred his interest in a large business he had built up and which was operated under the name of Chronister Bros. & Co. by a written contract to his sons without consideration, and which provided that he should work in the future for

Chronister Bros. & Co. at a salary of $75 per month. The record also reflects that after making this transfer to his sons the business was continued in just the same way it had been continued before the transfer, and that so far as the public was concerned nothing was known relative to the transfer. In fact W. J. Chronister was continuing to manage and control the business just as he had done for many years before at the time of the trial of this case.

The validity of these deeds and the intentions of the parties in reference to their execution, and the facts and circumstances surrounding their execution must be determined as of the date the deeds were filed for record, and not on the date they were executed. *Kaufman* v. *Citizen's Bank,* 189 Ark. 113, 70 S. W. 2d 572. As stated above on the date these deeds were recorded the record reflects that both W. J. Chronister and A. N. Falls were insolvent and execution proof. In the case of *McConnell* v. *Hopkins,* 86 Ark. 225, 110 S. W. 1039, this court ruled that: "Where a husband's deeds to his wife were kept from the record, whether with fraudulent intent or not, the law will not permit her to assert her title, upon his subsequent insolvency, as against those who gave him credit on the basis of his apparent ownership of property."

The facts in the Kaufman case, *supra,* and the facts in *Wasson* v. *Lightle,* 188 Ark. 440, 66 S. W. 2d 652, are similar in many respects to the facts and situation in the instant case, and the principles of law therein announced are peculiarly applicable to the facts herein.

Appellant argues that when A. N. Falls made the deed to his brother there was a valuable consideration for it. It is true that A. N. Falls testifies that while the deed recites $1 and the other valuable consideration he in fact owed his brother $10,130 for borrowed money at the time he executed the deed to him, and that the major part of this money had been borrowed from the estate left by his father which was administered by Roy Falls. He claimed that he borrowed most of the money from Roy Falls in 1919, and had given him a note for it. He was unable to produce the original note, but produced copies of several renewals on one of which was written that the

620

deed was in payment of the note. According to the evidence he had not made Roy Falls a deed to pay off this note of long standing until December 18, 1930, when the Farmer's Bank & Trust Company was having difficulties in making collections on account of the depression and a drouth, and this deed was not recorded until six days after the bank failed. He admits that in making his statements to obtain credit he had never mentioned or included any interest he owned in his father's estate. We think the court was warranted in finding that there was no consideration for the deed.

Our reading of the evidence has convinced us that these deeds were made with the intention of defrauding the grantors' creditors, and that the decree of the chancellor should be affirmed, which is accordingly done.