Renn *v.* Renn.

4-7326

179 S. W. 2d 657

Opinion delivered April 17, 1944.

*E. G. Ward,* for appellant.

*DeWitt M. Hines,* for appellee.

McFADDIN, J. This appeal concerns the title to real estate. Appellant claims under a tax forfeiture and state deed. Appellee, Flossie Renn, claims under a divorce decree. The other appellees are nominal parties.

Adolph Renn and Flossie Renn were married in about 1922, and during all of their married life lived on the lands here involved. On September 26, 1940, Flossie Renn filed a suit for divorce, dower, etc. The case was heard in open court on November 30, 1940, and resulted in a decree awarding Flossie Renn a divorce, and the custody of the two children (then aged fifteen years and twelve years, respectively) and one-third interest in all of the real estate of Adolph Renn, specifically describing the lands here involved. George Bridges was appointed commissioner to lay off the said one-third interest in the lands; and if the lands could not be divided in kind then the commissioner would so report and secure an order of sale of the lands.

On October 6, 1941, the court ordered the commissioner to sell the lands and divide the proceeds. When the commissioner advertised the land sale, appellant herein, G. A. Renn (brother of Adolph Renn), filed this present suit in the chancery court against appellees herein, Flossie Renn and George Bridges, commissioner. G. A. Renn alleged that he was the owner of the lands and claimed that the proposed sale should be enjoined and the title of G. A. Renn should be confirmed and quieted. To sustain his case, G. A. Renn alleged in the complaint and testified before the court, that the lands forfeited to the state in 1934 for nonpayment of 1933 taxes; that the lands were certified to the state in 1936; that the state's title was confirmed in April, 1938, by suit under act 119 of 1935; that on October 17, 1940, G. A. Renn acquired the deed from the state; that he used his own money to pay for the deed and to affect improvement district redemptions; that after a few months he dispossessed his brother, Adolph Renn; and since 1941 G. A. Renn had been collecting the rents from the lands. He was supported by record testimony as to the forfeiture, confirmation, and deed to himself; and was supported by witnesses as to the rent, the amount of which was not shown.

Flossie Renn, by pleading and testimony, denied that G. A. Renn was the owner of the lands, and alleged

that the tax forfeiture of the lands by Adolph Renn and the state deed to G. A. Renn were, together and separately, a subterfuge and a fraud to defeat her of her dower; that G. A. Renn acted as an agent of Adolph Renn in getting the state deed, and in collecting the rents; and that Adolph Renn was the owner of the lands and G. A. Renn a mere trustee; and she prayed for a decree so declaring. Adolph Renn was not called as a witness by either side. On final hearing the chancery court dismissed the complaint of G. A. Renn; and on this appeal, G. A. Renn challenges the correctness of that decree, and also urges, here, the contention made in the lower court, that certain evidence be excluded as -incompetent.

Giving due consideration to this second point—about the incompetency of certain evidence—we are, nevertheless, of the opinion that the decree of the chancery court was correct and should be affirmed. Here are some of the facts shown in the evidence which support the contentions of Flossie Renn and the decree of the chancery court:

(1)   Flossie Renn did not know the lands were forfeited for taxes until after her divorce suit was pending. Of course she had legal notice of the forfeiture because it was of record, but she had no knowledge. She would have paid the taxes if she had known about them.

(2)   Adolph Renn had sufficient money to have paid the taxes originally if he had wanted to do so; but later made disposition of his property, so that he was either insolvent or had removed all his other property from Arkansas at the time that G. A. Renn acquired the state deed.

(3)   The divorce suit was filed September 30, 1940, and G. A. Renn secured the state deed on October 17, 1940. He allowed Adolph Renn to remain on the lands for three months and Adolph Renn paid rent at the rate of $5 per month for that period of time for a house on the land.

(4)   The amount that G. A. Renn paid for the state deed and for all the improvement taxes was approximately $200. The value of the lands and buildings was testified to be approximately $2,000.

(5)   G. A. Renn admitted that Adolph Renn rented the lands to Herman Helvey for 1941, and G. A. Renn "let the deal stand." Herman Helvey testified that he made the rent contract with Adolph Renn in March, 1941, (five months after the state deed to G. A. Renn); and that in the fall of 1941 the rents were paid to Adolph Renn. Helvey further testified that he never knew G. A. Renn in any part of the transaction and dealt with Adolph Renn as the owner of the land throughout the entire year of 1941. This continued possession of Adolph Renn under all the facts in this case was badge of fraud. (See *Wasson* v. *Lightle,* 188 Ark. 440, 66 S. W. 2d 652, and cases there cited, and see, also, 27 C. J. S. 801 where it is stated that where there is no change of possession then the burden is on the alleged grantee to prove good faith and the payment of a valuable consideration.)

(6)   In the fall of 1941, Adolph Renn sent Flossie Renn money from the rents of that year and offered to turn over to her all of the 1941 rents on condition that she would relinquish all claims to the land. To explain this testimony G. A. Renn stated that for years he had been helping in the support of the children of Adolph Renn and that Adolph Renn had no property left, and it was for the support of the children that he (G. A. Renn) sent the money in the fall of 1941 to his brother, Adolph Renn, to be sent to the children.

(7)   G. A. Renn admitted that he knew Flossie Renn and Adolph Renn had been having marital difficulties for ten years and divorce suits had been filed and dismissed; and knowing all this he drove from his home in Middlebrook, Missouri, to Little Rock, Arkansas, for the purpose of buying from the state of Arkansas the lands in this state that he knew his brother had owned for twenty years, and that as soon as he secured the deed he went back to his home in Missouri and began

immediately to collect rent from his brother at $5 per month for a house on the farm lands. There are other facts in the record.

It is true that fraud is not to be presumed, but must be proved. (37 C. J. S., § 114, p. 426.) It is also true that fraud may be proved by circumstantial evidence, provided it affords a clear inference of fraud and amounts to more than mere suspicion or conjecture. (37 C. J. S. 436.) When we consider: the value of the land as compared with the amount that the appellant paid the relationship of the parties, the knowledge G. A. Renn had about the marital difficulties and former divorce suits, the purchase by G. A. Renn while the divorce suit was pending, the fact that G. A. Renn claimed he had been contributing to the support of the Adolph Renn family, the ready acquiescence of Adolph Renn in the loss of his property (evidenced by the immediate payment of rent to G. A. Renn), the continued exercise of ownership by Adolph Renn after G. A. Renn received the deed (as evidenced by the renting of the land to Herman Helvey for 1941, and Helvey's testimony on this point), the strangeness of one brother traveling over a hundred miles into another state and buying his brother's land for taxes (with no apparent use for his land), and, that the result of all of this was to defeat the erstwhile wife of her dower interest in the land—when we consider all of these facts and others in the record—we reach the conclusion that the chancery court was correct in dismissing G. A. Renn's complaint for want of equity.

He, it was, who asked equity to aid him. He therefore had the burden not only of proving his legal right, but also of proving himself free of equitable wrongdoing. The facts developed placed against him a *prima facie* case of inequitable conduct, and he offered no substantial evidence to overcome this *prima facie* case. The maxim, "He who comes into equity must come with clean hands," finds full application here. In discussing this maxim it is stated in 21 C. J. 185: "The same rule applies in the case of other devices to defraud creditors. Not only is the fraudulent debtor denied relief, but also

his fraudulent grantee; when the latter comes into equity to assert his claim," and in 21 C. J. 186 it is stated: "One may be barred from relief by misconduct with reference to the suit itself. Thus equity may refuse to protect one who fails to make a full and free disclosure of all of the facts relating to his case."

But over and beyond the failure of G. A. Renn to show himself entitled to equitable relief, there is ample authority to support relief for Mrs. Flossie Renn. The points of this authority may be summarized:

I. Where property is allowed to forfeit for taxes, and then some member of the family (or other confederate) acquires a deed from the state or taxing agency, equity will examine the transaction to see if it was a fraudulent conveyance; and upon ascertaining such to be the fact, then the purchaser will be held a trustee, or the entire transaction will be held a redemption by the original owner. Regardless of the form of relief, equity will pierce the sham of the fraudulent conveyance. *Humphreys* v. *McKnight,* 202 Ark. 715, 152 S. W. 2d 567; *Zimmerman* v. *Franklin County Savings Bank & Trust Co.,* 194 Ark. 554, 108 S. W. 2d 1074; *Fluke* v. *Sharum,* 118 Ark. 229, 176 S. W. 684; *Drake* v. *Sherburne,* 57 Ark. 563, 22 S. W. 430; *Rowland* v. *Wadly,* 71 Ark. 273, 72 S. W. 994. A forfeiture and a deed from the taxing agency may be considered as just another form of fraudulent conveyance.

II. Mrs. Flossie Renn was a creditor of Adolph Renn from the time the decree was rendered for divorce, alimony, maintenance, and dower. In *Sneed* v. *Sneed,* 172 Ark. 1135, 291 S. W. 999, we said: "The law is that a wife who secures a judgment for alimony in a suit against her husband for a divorce is a creditor, and a conveyance made in fraud of her rights as such may be set aside or the property subjected to the lien of the judgment, provided that the rights of purchasers without notice and for a valid consideration have not intervened. *Masterson* v. *Ogden,* 78 Wash. 644, 139 Pac. 654, Ann. Cas. 1914D, 885; *Barber* v. *Barber,* 21 How. (U. S.) 582, 16 L. Ed. 226; *Fahey* v. *Fahey,* 43 Col. 354, 96 Pac.

251, 127 Am. St. Rep. 118, 18 L. R. A., N. S., 1147, and *Austin* v. *Austin*, 143 Ark. 222, 220 S. W. 46.''

It is true, Mrs. Renn did not occupy the status of a creditor until the date of the divorce decree and that this was after the forfeiture of the lands and the state deed to G. A. Renn. She was thus a subsequent creditor rather than an existing creditor. But § 6070 ff of Pope's Digest protect subsequent creditors as well as existing creditors under certain circumstances, and we believe those circumstances exist here. A voluntary conveyance by an insolvent debtor is fraudulent as to a subsequent creditor if the debtor reasonably had in contemplation the contracting of such future debt at the time the conveyance was made. *Rudy* v. *Austin*, 56 Ark. 73, 19 S. W. 111, 35 Am. St. Rep. 85; *Driggs* v. *Norwood*, 50 Ark. 42, 6 S. W. 323, 7 Am. St. Rep. 78; *Scott* v. *McCraw, Perkins & Webber Co.*, 119 Ark. 492, 179 S. W. 329, and see West's Arkansas Digest, ''Fraudulent Conveyances,'' Key No. 69. That this whole scheme was in the contemplation of Adolph Renn when he allowed the lands to forfeit for taxes, may be reasonably inferred from the testimony of G. A. Renn that the husband and wife had been having marital difficulties for ten years and divorce suits had been filed and dismissed.

III. In 27 C. J. S., Divorce, § 273, pp. 1078-9, it is stated: ''A conveyance made by the husband in anticipation of the wife's libel for divorce, and to prevent her from recovering alimony, is fraudulent, and may be set aside unless the purchaser took without notice and for value. . . . To invalidate a conveyance of the husband's property, the grantee ordinarily must have had actual or constructive notice that the conveyance was for the purpose of defeating the wife's claim to alimony.''

In *West* v. *West*, 120 Ark. 500, 179 S. W. 1017, we recognized the rule that a conveyance made in anticipation of marriage, and for the purpose of defrauding the intended wife of her dower, could be set aside by her. Although the proof in that case did not justify such relief, nevertheless the case recognized the rule, as also

did *Roberts* v. *Roberts,* 131 Ark. 90, 198 S. W. 697. We think the testimony here shows that the forfeiture of the lands by Adolph Renn and the state deed to G. A. Renn were for the purpose of defrauding Flossie Renn of her dower and the rule recognized in *West* v. *West* and *Roberts* v. *Roberts* should be applied to this case. See, also, *Wilson* v. *Wilson,* 163 Ark. 294, 259 S. W. 742.

Without lengthening the opinion by citation of other authorities we may conclude by stating that equity must always be as astute in preventing fraud as corrupt minds are in conceiving it. A court of conscience must keep the granted relief abreast of the current forms of iniquity. We should never naively refuse relief against fraud simply because there is no similar instance of such fraud in any of the books.

The decree of the chancery court was correct, and is in all things affirmed.