BARNETT *v.* BARNETT.

4-7836                                          193 S. W. 2d 319

Opinion delivered March 25, 1946.

*Edward H. Coulter,* for appellant.

*Aubert Martin* and *D. A. Bradham,* for appellee.

GRIFFIN SMITH, Chief Justice. Silas Barnett, by deed of November 1, 1940, named Frank Barnett (his illegitimate son) as grantee. By the deed's terms approximately an acre—including the family residence—and described as Lot Eleven, etc., was conveyed. October 23, 1944, Frank and his wife, Ollie, sold the property to Sam Haskell and his wife, Era. Included in the controversy by reference, (but not for the purpose of adjudication of title) is Lot Seventeen. It is vacant and adjoins Lot 11, but the value is not stated.

Three days after executing the deed to Lot Eleven, Silas married Bessie Paskel. Bessie lived with Silas as housekeeper, and appears to have been strongly attached to him. Silas died December 11, 1940—five weeks after he married Bessie.

After Frank sold Lots Eleven and Seventeen to the Haskells, Bessie refused to move. An original suit in ejectment was abandoned after Bessie alleged that Frank's deed was obtained through fraud. The cause was transferred to equity, where the deeds were canceled.

The Chancellor supplemented his decree with an opinion in which it was found that Silas (twice a widower) had for eleven or twelve years been attended by Bessie. He was advanced in years with consequent reduced earning capacity; but relaizing that the end was near he desired to measurably provide for Bessie's necessities. It is quite clear that, like most other Negroes so circumscribed regarding property rights, there was not a full understanding of the effect of illegitimacy and nonparticipation in the father's estate. Pope's Digest, § 4340. Having expressed apprehension to a friend, Silas was advised that marriage would solve the problem, and that Bessie would then be assured of "a roof over her head."

In the Chancellor's opinion there is the statement that Silas did not tell Bessie of his intention to convey the home place to Frank, but left her under the impression

that he intended to execute a will, leaving Lot Eleven to her. The Chancellor was not certain just what Silas intended to do, but declared that intentions were not controlling inasmuch as Bessie was not consulted, and did not appreciate the extent of what had been done, if in fact she knew about the deed. There is testimony that Bessie ". . . was familiar with the occasion when the deed was made," but she emphatically asserted that Silas intended to make a will. A legitimate son (D. L. C. Barnett) died before the instant suit was brought; and none claiming through him has alleged any rights.

Bessie testified that Silas told Frank ". . . to make a will for all three of us"—Bessie, Frank, and D. L. C. The father's wishes were disregarded, Bessie says, and in effect she charges that Frank fraudulently substituted the deed and that the dying man mistakenly supposed he was providing for the three. But, near the same time he asked advice about how to proceed in order to take care of Bessie during her lifetime, and was told that marriage would solve the problem. Bessie was 19 years of age when she went to live with Silas, according to her testimony.

The friend who suggested marriage was Emanuel Walker. He testified that when Silas became ill ". . . he called me to his room one evening and said that if anything happened to him he wanted Bessie to have a home if nothing else. I told him the only thing I knew was for him to marry her. About a week or ten days after that they got married."

Silas was apparently unable to write at that time, although there is testimony that he was not illiterate. The signature was witnessed by Carrie McCay, who testified that the document was not read by or to Silas. George Hammons, notary public who took the acknowledgment a day after Silas made his mark, testified that neither the text nor substance was discussed when his official act was performed, nor during the time he was in the home.

Frank Barnett's version of the transaction is that his father expressed a desire to make the conveyance and asked him (Frank) to have the deed prepared. This was done; then, after Silas had signed it, Silas told Frank to get a notary public to take the acknowledgment. When Hammons arrived at the sick man's bedside ". . . Silas reached under his pillow and got the deed and told Hammons he wanted it acknowledged."

Frank insists that he took possession of the deed at once, but did not have it recorded for several months, ". . . but I have had it under my control ever since it was executed."

While some of the testimony is woefully contradictory, Bessie's version is that Silas intended to execute a will in favor of "the three of them." Silas had previously deeded Lot Seventeen to Frank; and the Chancellor, in setting aside the deed from Silas to Frank covering Lot Eleven, and the deed from Frank and his wife to Haskell conveying both lots, was seemingly convinced that Frank deceived his father when he procured a deed to Lot Eleven, the intention being to convey Lot Seventeen.

In any event, the thread of substance running through a preponderance of the testimony is that Silas wanted Bessie to have "a roof over her head" while she lived; and that is what she would have succeeded to without question if the deed to Frank had not been made shortly before the marriage. There is nothing to indicate that Silas wanted Bessie's heirs or those whom she might favor by deed or will to become beneficiaries of the home place to the exclusion of the illegitimate son.

We agree with appellee that *Roberts v. Roberts, Administratrix*, 131 Ark. 90, 198 S. W. 697, is applicable. In that case a summary from Ruling Case Law, v. 9, p. 591, was quoted with approval, effect being that if shortly before marriage the husband-to-be conveys his real estate without consideration, and without the consent or knowledge of the intended wife, with the purpose and result of unfairly depriving her of dower, the courts will set aside the conveyance as a fraud upon her rights. In *West v.*

*West,* 120 Ark. 500, 179 S. W. 1017, the rule was said to be that if a man or woman conveys away his or her property for the purpose of depriving the intended husband or wife of the legal rights and benefits arising from such marriage, equity will avoid such conveyance or compel the person taking it to hold the property in trust for or subject to the rights of the defrauded husband or wife.

Our conclusion is that the deed to Frank (being in legal effect a fraud upon Bessie's marital rights) was voidable as to her. The decree is modified with directions that dower and homestead be vested in Bessie; but, subject to these rights, the remaining interest passes to Frank. The judgment insofar as this end was not accomplished is reversed, and the cause is remanded with directions to enter an order not inconsistent with this opinion.