66   623
75   148

## ST. JOSEPH'S CONVENT *v.* GARNER.

Opinion delivered October 14, 1899.

1. WILL—TESTAMENTARY CAPACITY.—The fact that a testator was of weak mind and not "bright," or that she was not as intelligent as the average girl, does not show that she did not have sufficient testamentary capacity to execute a will. (Page 628.)

2. SAME—PROBATE ON INSUFFICIENT EVIDENCE.—An order of the probate court admitting to probate a certified copy of the will of a resident, instead of requiring the original will to be produced, is irregular merely, and cannot be set aside for that reason on collateral attack. (Page 629.)

Appeal from Randolph Circuit Court in Chancery.

JOHN B. McCALEB, Judge.

*S. A. D. Eaton* and *A. J. Witt,* for appellant.

The probate of a will is conclusive as to all matters affecting the validity of the will or of its probate. Croswell, Ex. & Adm. 34. It was error for the court to refuse to transfer this case to law, after the filing of the supplemental complaint and answer. Sand. & H. Dig. § 6121. The will, having been executed and proved according to the laws of Missouri, is valid here. 31 Ark. 175. The copy of the will was the best evidence of its contents obtainable at the time, and it was sufficient for purposes of probate. 14 S. W. 964. The sufficiency of the evidence adduced in the probate court is not open to review now. Sand. & H. Dig. § 7410; 31 Ark. 175; 34 Ark. 451; 51 Ark. 281; 46 N. J. Law, 211.

*Chas. E. Elmore* and *P. H. Crenshaw,* for appellees.

The probate court had no jurisdiction, because the testatrix, at the date of her death, was a resident of this state, and only a certified copy of her will was submitted for probate, instead of the original will. Sand. & H. Dig., § 7408 (cf. *ib.* 7413); 29 Ark. 52; Freeman, Judg. § 120; Black, Judg. § 208. Appellees have the right to collaterally attack the will in this proceeding. 37 S. W. 204.

BATTLE, J. "On March 8, 1897, appellant filed its complaint in equity against appellees, alleging that it was a corporation, organized and existing under and by virtue of laws of the state of Missouri, and that it was authorized to acquire and hold real and personal property; that it was the owner of the fractional southwest quarter (west of river), and the southeast quarter of the northwest quarter of section 13, township 19 north, range 2 east, Randolph county, Arkansas; that it derived title through one Ellen McKenzie, who, being the owner of said lands, executed her last will and testament on February 13, 1891, and thereby devised and bequeathed to plaintiff all her property, real and personal, of which she should die seized; that said Ellen McKenzie thereafter died seized and possessed of said lands, and that on July 13, 1891, said will was duly admitted to probate in Randolph county, Arkansas, by the probate court thereof, and admitted to record as a valid will; that defendants (except Poe) claim title adverse to the plaintiff by virtue of claim that they are heirs at law of Ellen McKenzie, deceased; that at July term, 1896, of the Randolph circuit court the defendants (except Poe) brought suit in ejectment against Jeremiah Poe, who was then in the possession of said lands, and that, at said term, in said cause, a judgment for the possession of said lands was rendered in favor of said plaintiffs; that the plaintiff had no knowledge or information regarding said suit, and was not made a party thereto, although plaintiffs in that suit well knew of this plaintiff's rights in the premises; that said court in said suit had no jurisdiction to determine rights of plaintiff, and that said suit and judgment were frauds on its rights; that said Poe has not been ejected under said judgment, but is in possession and holds as the tenant of plaintiff; that defendants threaten to eject him, and, unless restrained by this court, will proceed by judicial process under said void judgment to obtain possession of said lands, which, if done, will cause plaintiff irreparable injury, for which it will have no adequate remedy at law; and that defendants, Maggie Hamilton and Walter Hamilton, are minors, without statutory guardian. Plaintiff asked for a temporary restraining order, restraining defendants from interfering with the possession of Poe; that, on final hearing, the injunction be made perpetual,

and that plaintiff's title to said lands be quieted as to the claim of all the defendants; that said judgment be cancelled and annulled, and for proper relief."

"Adult defendants, on August 2, 1897, filed an answer and cross-complaint, in which they denied the corporate existence of plaintiff; denied that plaintiff was. owner of said lands; denied that plaintiff derived title from Ellen McKenzie 'in manner and form as charged in complaint;' denied that Jeremiah Poe, their co-defendant, was in possession as tenant of the plaintiff; alleged that they, together with the minor defendants, Maggie and Walter Hamilton, were the owners and in the possession of the lands described by virtue of inheritance from Ellen McKenzie, who, at her death, was seized and possessed thereof; that the defendants are her 'sole' and only heirs at law; allege that said Ellen McKenzie was a resident of Randolph county, Arkansas, and that at the time of her death she was temporarily absent from the state for her health, and an inmate of the St. Joseph's Convent of Mercy; denied that Ellen McKenzie ever signed, made or executed the last will and testament on which plaintiff relies, or that she ever made or executed any will whereby she left any property to plaintiff; charges that if any instrument is in existence purporting to be the last will and testament of Ellen McKenzie, same is not her act and deed,.and same was obtained fraudulently; deny that said will was ever admitted to probate or allowed of record in Randolph county, in manner and form provided by law, and deny that the will was ever proved in manner required by the laws of Arkansas. They further allege in their answer that Ellen McKenzie, at the time of her death, and for many years prior thereto, was of unsound mind, and 'disposing' memory, incapable of contracting and being contracted with, and incapable of disposing of her property by will or otherwise. They further alleged that Ellen McKenzie for a long time before her death was an invalid, and was an inmate of St. Joseph's Convent of Mercy for her health, and that plaintiff took advantage of her weak mental condition, and fraudulently induced and inveigled her into the execution of said pretended last will and testament, in fraud of defendants.

Defendants alleged that they obtained possession of lands in controversy by virtue of a judgment of Randolph circuit court, at July, 1896, term, in a cause wherein all of defendants, except Jeremiah Poe, were plaintiffs, and said Poe was defendant; and denied that said judgment was a fraud on the rights of plaintiff in this cause. Defendant Poe alleged that he was in possession of lands as the tenant of his co-defendants. Defendants further alleged that the pretended will is a cloud on their title. They asked that the complaint be dismissed, that the will be canceled, and that defendant's title to the land be quieted."

After this plaintiff filed an amended complaint, attempting to change the form of the action to ejectment, alleging that at the time the suit was commenced it believed that it was in possession of the land in controversy, but that it had since ascertained that the defendants were in possession; that it acquired title as alleged in the first complaint; and asked for judgment for lands and damages; and moved that the action be transferred to the law docket. The motion to transfer was overruled.

P. H. Crenshaw was appointed guardian *ad litem* of the minor defendants; and he accepted the appointment, and filed an answer, denying all material allegations in the complaints, and adopting the answers of his co-defendants.

Plaintiff filed an answer to the cross-complaint of the defendant, denying all allegations of fraud and undue influence, and alleging that Ellen McKenzie was a resident of the state of Missouri at the time of her death; that she was weak physically, but of sound and disposing mind, memory and understanding, and that she made the will, upon which it relies, "of her own volition, without solicitation or persuasion on part of plaintiff or any one in its behalf," and that it was probated according to law, and "is in all things valid and effective as a conveyance of real estate."

Defendants filed an answer to the amended complaint, denying allegations and claiming title as they did in the first answer.

The court, upon final hearing, found that the plaintiff "is a corporation duly organized and existing according to the laws of the state of Missouri; that Ellen McKenzie, on the 13th day of February, 1891, made and executed her last will and testa-

ment whereby she devised and bequeathed to the plaintiff the following lands in Randolph county, Arkansas, to-wit: the fractional southwest quarter (west of river) and the southeast quarter of the northwest quarter of section 13, township 19 north, range 2 east; that the said Ellen McKenzie departed this life in the city of St. Louis, Mo., sometime during the month of May, 1891, and that, at the date of her death, she was a citizen and resident of Randolph county, Arkansas, and that said last will and testament of said Ellen McKenzie had not been filed, admitted to probate, nor admitted of record, in conformity to the laws of the state of Arkansas; further that the said plaintiff claims title to said property by virtue of said will; that the said Ellen McKenzie was seized and possessed of the above-described lands at her death; and the court further finds that there is no proof to support the allegations of plaintiff's complaint that the said last will and testament of the said Ellen McKenzie was duly admitted to probate in said Randolph county, Arkansas. And the court further finds that the said Ellen McKenzie was never married, and that she left no issue of her body surviving her at her death, and that the defendants, except Jeremiah Poe, are next of kin and her sole and only heirs at law." Upon these findings the court dismissed the first and amended complaints; and the plaintiff appealed.

The undisputed evidence adduced at the hearing tended to prove that the plaintiff was a corporation, duly organized and existing under the laws of the state of Missouri, with authority to acquire and hold real and personal property; that Ellen McKenzie was the owner of the land in controversy at the time of her death; that she made a last will and testament, and thereby devised it to plaintiff; that it was proved and admitted to probate in the city of St. Louis, in the state of Missouri, where she died; and that a certified copy of the same, together with the proofs thereof, duly authenticated, were presented to the probate court of Randolph county, in this state, and the certified copy was admitted by such court to probate "as a valid will of lands in this state." The order of the court admitting it to probate is in the following words: "On this day the court examined a certified copy of the last will and

testament of Ellen McKenzie, deceased, late of the city of St. Louis, in the state of Missouri, together with the proofs thereof, duly authenticated, and, it appearing that said will had been duly executed and is the last will and testament of the said Ellen McKenzie, deceased, it is therefore considered and ordered by the court that said certified copy of said will be, and the same is hereby, admitted to probate as a valid will of lands in this state, and further ordered that said certified copy of said will, together with all endorsements thereon, be duly recorded in the book of wills in and for Randolph county."

The evidence also tended to prove that Ellen McKenzie was a resident of Rancolph county, in this state, at the time of her death; and that she died leaving the defendants, except Jeremiah Poe, her only heirs at law.

Over the objections of the plaintiff, Jacob Hufsteder, J. A. Luttrell, and D. W. Reynolds, who did not attest the will, were allowed to testify as to the mental capacity of Ellen McKenzie. Hufsteder, testified that her mind was weak, and that he did not think she understood what a contract is. Luttrell did not think that she was very bright, or that she was capable of making wills or contracts, and testified that her teacher said that she could not learn anything; and Reynolds said she did not have "a bright intellect like other children."

The effort to impeach the testamentary capacity of Ellen McKenzie was indeed feeble. If her capacity to make a will could have been questioned in this action, the testimony produced to prove her incompetent was not sufficient to accomplish that purpose. The substance of it was, she was "weak-minded," "not bright," not as intelligent as other girls, and the opinion of a witness, who, without stating any other facts, testified that he did not think that she was capable of making contracts or a will. There is nothing to indicate what he considered the test of the capacity to make a will. Hence his opinion is entitled to no consideration. The fact that her mind was weak, not "bright," or that she was not as intelligent as the average girl, does not show that she did not have sufficient testamentary capacity to execute the will in question. In *McCullough* v. *Campbell*, 49 Ark. 367, this court said: "Old age, physical infirmities, and even a partial eclipse of the mind would not prevent

her from making a valid testament, if she knew and understood what she was doing—if she could retain in her memory, without prompting, the extent and condition of her property, and comprehend to whom she was giving it, and be capable of appreciating the deserts and relations to her of others whom she excluded from participation in her estate."

The trial court obviously attached no importance to this testimony, but based its decree entirely upon its finding that the will was not probated according to the laws of this state. The reason for this finding is, a certified copy of the will was probated in Randolph county, in this state, where the testatrix resided at the time of her death, instead of the original. If this be true, was the probate of the will void, and can it be questioned in this action? This question was decided in the negative in *Janes* v. *Williams*, 31 Ark. 175. In that case James W. Duckett, the testator, resided at the time of his death in Sevier county, in this state. His will was proved and probated in the Court of Ordinary of Newberry district, in the state of South Carolina, and it was probated in Sevier county, in this state, by an authenticated copy of the will and the evidence by which it was established in South Carolina. Parties claiming as heirs and denying the existence of a valid will attempted, in an action in equity, to have the probate of the will in Sevier county set aside, because the authenticated copy, instead of the original, was probated in this state. Upon this part of the case this court said: "The order and judgment of the court to admit to record the will as probated, upon the copy of the will and the proof and orders certified from the Court of Ordinary of Newberry district never was set aside, nor was there any attempt made to set it aside. The attack made upon the validity of the will, and its probate in Arkansas, is, evidently, based upon the assumption that it was not a will unless probated as such; that as Duckett resided in Sevier county, Arkansas, the will should be probated there to give it effect, and particularly as the landed estate of Duckett lay in Sevier county, in this state. Let us concede that such should have been done, and that the evidence produced before the court of probate was not sufficient to warrant the judgment and decision of the court, and that the proceedings were erroneous,

yet, however erroneous the judgment of the court, it is binding upon all parties, until reversed by a higher tribunal.  *Miller* v. *Barkeloo*, 8 Ark. 318.

*    *    *    *    *    *    *    *    *    *    *

"It will readily be perceived that, as the testator in this instrument had a known domicile, and did devise land, it was necessary that the will should be proved in the county of Sevier, where the lands lie, and which was also his place of residence, as alleged by plaintiffs. In the case before us, there was an attempt to furnish what was assumed to be competent evidence,—an authenticated copy of the will, the proof upon which it was established and probated in South Carolina, together with the statement that the testator's domicile was in South Carolina. This was all of the evidence. There was nothing to prove the contrary. It was presented for the consideration and judgment of a court of competent jurisdiction, and it was held to be sufficient. We think the evidence not sufficient; certainly not to devise real estate in Arkansas, but, until reversed and set aside, for which provision is made by statute, we do not feel at liberty to treat the judgment of the court as void. * * * We must hold that the will of James W. Duckett must be taken and held as a probated will, with all the rights which arise under it."

To the same effect was the law declared in *Ludlow* v. *Flournoy*, 34 Ark. 460. In that case the court said: "At the time the will of Thompson B. Flournoy was probated, the probate court had full jurisdiction of the matter. If it granted the probate on insufficient evidence, it was only error. It might have been corrected by making an issue of *devisavit vel non*, as prescribed by the statute. It is not shown that any fraud was perpetrated upon the court or parties interested in procuring the probate, and the proceedings and orders of the court must stand. They cannot be in any manner collaterally attacked, nor even directly in chancery, except for fraud, or, perhaps, some other particular ground of chancery jurisdiction."

In the case we have under consideration the probate court of Randolph county had jurisdiction of the probate of the will of Ellen McKenzie, deceased. It found that the will, of which

a certified copy was before it, "had been duly executed, and is the last will and testament of the said Ellen McKenzie, deceased;" and upon this finding ordered that the certified copy be admitted to probate as a valid will of lands in this state, and that it be recorded as such. According to the previous decisions of this court, this order or judgment cannot be set aside or questioned in this action.

The decree of the circuit court is, therefore, reversed, and the cause is remanded with instructions to the court to enter a decree in accordance with this opinion.