McCombs *v.* Mansfield.

4-4666

Opinion delivered June 14, 1937.

*J. F. Loughborough* and *R. E. Wiley,* for appellant.
*J. A. Tellier* and *John Sherrill,* for appellees.

McHaney, J. Appellant is the widow and executrix of the estate of the late R. B. McCombs. Appellees are the liquidating agents for the American Company of Arkansas, now defunct, but formerly a large wholesale grocery corporation, with a principal office and business house in Little Rock and many branch houses scattered over the state. It was organized as a Delaware corporation in 1926, licensed in Arkansas, and was dissolved on December 31, 1932, and all its assets were assigned to appellees, three former stockholders and directors therein, for the purpose of liquidation. The late M. W. Hardy of Little Rock was the moving spirit in its organization.

and was its president from the date of organization until his death in 1929, when appellee Mansfield was elected president in November of that year, and so continued until dissolution. From organization in 1926 to 1931, inclusive, Mr. McCombs was managing director of the company, and as such was general manager of the business, owning a large block of the stock, was a director and a member of the executive committee of the board, composed of Hardy, McCombs and Anderson. McCombs and Hardy were brothers-in-law. At the annual meeting of stockholders held at the close of 1930 or early in January, 1931, there was much sentiment for and considerable discussion of a dissolution of the concern, of which McCombs was cognizant and also knew that the company had sustained substantial losses in its operations, and, apparently to forestall the threat and to allay such sentiment, he submitted to the auditors a padded inventory of the assets, increasing same $118,439.93 over and above the correct amount of the assets, and this nice showing as a result of the falsified inventory, induced the stockholders to continue the business in 1931. The same thing was repeated in the inventory submitted to the auditors in January, 1932, but same was discovered, and, when confronted with same, he left the business, never to return, as he was shortly thereafter accidentally drowned when his automobile ran off the road into deep overflow water.

Thereafter appellees exhibited a claim to appellant as executrix of said estate for $254,536.26 as damages for negligence and breach of trust of R. B. McCombs, as managing director of said company. The claim was disallowed, and this suit was begun on June 16, 1933. The complaint, in addition to some of the matters heretofore set out, claimed damages in connection with operations in 1931 over what it would have suffered through liquidation, if it had liquidated at the close of 1930, in the sum of $97,-666.79. This item was disallowed by the court and forms the basis of a cross-appeal by appellees. Another item of damage claimed was for $28,649.76, about which it is alleged that McCombs received for the company special brokerage and rebates from 1926 to 1931, inclusive, which

he wrongfully paid to various employees, including himself, in amounts over and above their authorized salaries, as follows: (Setting out the employees and amounts received by each during these years, totalling the amount aforesaid.) Other items of damage were claimed by appellees and disallowed by the court, about which we do not understand there is any controversy. Of the amount claimed for wrongful overpayment of salaries, the court allowed and entered judgment against appellant for $22,018.56, and disallowed the amount claimed, $6,631.20, because this amount, the court held, was paid out for company benefit. Another item claimed in an amendment to the complaint, filed December 29, 1933, relates to an order for merchandise given by R. B. McCombs to the McGehee branch of the American Company amounting to $1,005.49, to be shipped to his brother, A. P. McCombs, at Thebes, but to be charged to the former at the McGehee office. This was done, but when the account reached the home office in Little Rock, he directed it to be charged to A. P. McCombs. This account was never paid, but of this the court allowed judgment for $412.65. The total amount, including interest, for which judgment was rendered against appellant was $25,809.43. From this decree of the court there is an appeal and cross-appeal.

Disposing of the cross-appeal first, we are of the opinion that the trial court correctly disallowed the claim for $97,667.79. While the court found that the stockholders were induced to continue operations during 1931 by reason of the wrongful padding of the inventories and otherwise inflating the statement of assets by Mr. McCombs which caused them to believe that the financial condition of the company was such as to justify a continuation of the business, and that the company lost said sum by operations in that year, it further found that appellant was not liable therefor, because the loss occasioned by a quick liquidation would have equaled or exceeded that amount, and that it, therefore, suffered no loss on this account. The claim is too speculative and conjectural. It is another case of the hindsight being better than the foresight. It will be remembered that

1930, 1931 and 1932 were depression years, in which many business concerns of good repute and long standing, including banks, went to financial wreck and ruin, and the American Company was one that sustained large losses. At the beginning of 1931 it owed bills payable to banks of $345,000 which were indorsed by the directors, including Mr. McCombs, and about $117,000 of other debts, or a total of nearly one-half million dollars, all of which was paid off by McCombs through operations in 1931. This, of course, involved orderly liquidation by the company itself. It went on a cash basis, sold goods for cash, pressed collections, reduced the number of branch houses, and handled much less merchandise. It had begun to do this in 1930, for in that year it purchased about $1,000,000 less of merchandise than it did in 1929. Such a course of liquidation reduced the total of its assets, but it, also, at the same time, liquidated all its debts. Of course it was wrong, reprehensible, to pad the inventories and otherwise inflate the assets for the purpose of deceiving the stockholders, or creditors, or both. But fraud or deceit without injury is not actionable, and here no injury is shown. No creditor is complaining. There are no creditors. The directors ought not to complain for they have been relieved of indorsements on $345,000 of the company's paper at banks. The stockholders have not been injured. True, the operating loss in 1931 was $97,-667.79, but who can say they would have liquidated had they known the true facts. Some of them now say they would have done so, and they truthfully say so thinking they would. But that is a retrospective view. It is hindsight. They might or they might not have done so. And who can say the loss of liquidation would not have been as great as the loss of operation. It is speculation. It is conjecture. The court properly denied the claim, and its action is affirmed on cross-appeal.

As to the small item of $412.65, above mentioned, we think the court fell into error in allowing same. This claim was never presented to the executrix until action was brought on it in the first amendment to the complaint which was filed December 29, 1933. Mr. McCombs died

February 13, 1932, and appellant was appointed executrix a few days later. It was not presented within a year from her appointment and is, therefore, barred by the statute of non-claim of one year, which was pleaded in bar thereof. Ignorance of the claim does not excuse the delay unless caused by fraudulent concealment. There was no fraudulent concealment. McCombs was not there, and he made no representations to deceive those in charge of the books and accounts. *Planters' Mutual Ins. Co.* v. *Nelson*, 80 Ark. 103, 96 S. W. 123; *McKinney* v. *Beattie*, 157 Ark. 356, 248 S. W. 280.

Appellant insists that the judgment against her as executrix of said estate for $22,018.56 and the interest thereon should be reversed, because there was no loss to the company by reason of the payment of salaries, or a portion thereof, out of the brokerage account, and that McCombs had authority to fix salaries and make the payments, and we agree with her in this contention. The brokerage account was, as its name implies, an account to which brokers' fees or confidential rebates, collected from manufacturers or dealers selling merchandise to the company, was credited. Originally, Mr. Hardy and Mr. McCombs organized the Southwest Brokerage Company, a separate corporation, but owned entirely by the American Company or its predecessor, the American Grocery Company. Its purpose was to receive these confidential rebates which some of the manufacturers from whom goods were purchased would not allow and pay directly to the American Company, but which was a substantial source of income to the American Company, amounting to more than $230,000 during its existence. Hardy and McCombs advanced money to the Southwest Brokerage Company and most of the $6,631.20, which the court deducted from the $28,649.76 claimed as wrongfully paid out of the brokerage account, was to reimburse them for advancements made. This is mentioned to call attention to the fact that Mr. Hardy, president of the company, not only knew of this account, but himself received some of the funds from same. He knew, also, from 1926 to 1929, inclusive, that the funds in this account were used for company purposes, among such being the payment of a por-.

tion of some of the officers' and employees' salaries therefrom. During that period there was paid from said account salaries to employees in the sum of $12,873.56. During 1930 and 1931, after Hardy's death, while appellee, Mansfield, was president, there was paid to employees from said account $4,775 for each year. It is not suggested that McCombs embezzled any of this money. It was paid out on checks, not drawn by him, but by another officer with his approval. The executive committee knew all about it. It is not suggested that these employees were overpaid, or that the payments were made through fraud or collusion. The salaries of all officers and employees were fixed by McCombs, a member of the board, of the executive committee and managing director. There is no record in the minute book that the board ever fixed salaries or directed salaries to be reduced, although it is testified that it was understood that salaries would be reduced in 1931. McCombs seems to have made such an order, but later had the order disregarded by paying the reductions from the brokerage account. Even so, his motive in doing so is not shown to have been corrupt. On the contrary, the payments were made from month to month to old and trusted employees, nearly all of whom testified in corroboration of the witness McFarlane that all these monthly payments were parts of salaries paid for services rendered by those employees in accordance with the contract rate of pay agreed upon in advance by such employee and McCombs, who had the authority to, and did, fix the pay of all employees. We are, therefore, of the opinion that the payments were made for company benefit, that McCombs had the authority to make them, and that there can be no recovery against his estate on this account.

The judgment will be reversed on direct appeal, and the cause dismissed.

The Chief Justice and Mr. Justice HUMPHREYS hold that there should be a judgment for $4,775, being the salaries paid from the brokerage account during the year 1931, and dissent to this extent.