DODD *v.* HOLDEN.

4-7015                                    171 S. W. 2d 949

Opinion delivered May 10, 1943.

818

*Ras Priest* and *Claude M. Erwin,* for appellant.

*Pickens & Pickens,* for appellee.

SMITH, J. W. L. Dodd was a resident of Detroit, Texas, but died in Ft. Worth, May 3, 1933. He owned lands at the time of his death in the state of Texas and in Jackson county, Arkansas. Under the terms of the instrument, said to be the last will and testament of W. L. Dodd, an undivided one-third interest for life in the Jackson county lands was devised to D. P. Dodd, a son, with the remainder to Ruth and Alice, the daughters of D. P. Dodd.

On the 7th day of December, 1936, D. P. Dodd conveyed to the other heirs of his father ''all the undivided interest, share, right, title and equity'' of the said D. P. Dodd in and to the lands involved in this action, and these grantees on the same day conveyed the interest thus acquired, together with the interest which they supposed they had inherited from W. L. Dodd, to R. G. and Brouse Holden.

At the time of the execution of the conveyances just mentioned the will of W. L. Dodd had not been probated and was not known to be in existence. This instrument named the testator's wife as executrix, but for some reason, not explained, she did not probate the will. The widow died July 13, 1936, and she appears to have previously delivered the will to her son, D. P. Dodd, who not only failed to probate the will but concealed its existence, and it was found by D. P.'s widow, a second wife, who was not the mother of Ruth and Alice, after his death, among his papers.

The original will was typewritten and was properly attested. Someone made a longhand copy of the will, and

this copy, written with pen and ink, was probated in accordance with the laws of the state of Texas. The order admitting the will to probate in Texas, on January 31, 1938, recites that proof was made of the genuineness of the signatures of the testator and that of the attesting witnesses. Thereafter, an authenticated copy, in proper form, of the proceedings in the Texas probate court was filed with the probate court of Jackson county, Arkansas, which court admitted the will to probate in that county on July 29, 1939. But, prior to either of these dates, the Holdens had apparently acquired title to the land from the heirs of W. L. Dodd. An abstract of the title was submitted to and approved by more than one attorney, and but for the will, which was unknown to the Holdens when they bought the land, they acquired title to it. This fact is conceded.

The widow of W. L. Dodd, without probating the will or disclosing its existence, made application for letters of administration in Jackson county, Arkansas, of which county she became a resident, which were issued to her upon affidavit being made that W. L. Dodd had died intestate. After the death of W. L. Dodd's widow, his granddaughter, Ruth (the daughter of D. P.), made application for letters of administration in succession and, in that connection, Ruth made affidavit that W. L. Dodd had died intestate.

When the Holdens negotiated with the parties supposed to be the heirs of W. L. Dodd, an intestate, it was required by them that the administration upon the estate of W. L. Dodd be closed, and Ruth filed what was later approved as a final settlement and the administration was closed.

The Holdens entered into the possession of the land described in their deed and have since continuously remained in possession.

On November 11, 1941, this suit was filed by Ruth Dodd and Alice Dodd Henley, her sister, against the Holdens to recover an undivided one-third interest in the land, and for partition thereof, and for an accounting of rents and profits.

The complaint alleged that W. L. Dodd did not die intestate, but that he left a will under the provisions of which D. P. Dodd had been devised an undivided one-third interest for life in the lands with the remainder to these plaintiffs; that the will had been duly probated in Texas, the state in which the testator resided at the time of his death, and in which state a part of his lands were situated, and that thereafter an authenticated copy of the will had been admitted to probate in Jackson county, Arkansas.

A demurrer to the complaint having been overruled, an answer was filed interposing various defenses, among others, laches and estoppel, neither of which defenses was sustained by the court below. We do not discuss either of these defenses, as the complaint was dismissed as being without equity (and from that decree is this appeal) upon another and a sound ground which we now consider.

It is conceded that the alleged will of W. L. Dodd, admitted to probate in Texas, was not the original will of W. L. Dodd, but was a copy thereof. The will in Texas was admitted as a holographic will, and the testimony of Ruth Dodd, and others, was there heard to the effect that the will was in the handwriting of W. L. Dodd and bore the genuine signatures of two persons who had signed as attesting witnesses.

What is now said to be the genuine last will and testament of W. L. Dodd was not a holographic will, but was a typewritten instrument a correct copy of which was filed for probate.

Testimony upon these issues was dispensed with by a stipulation as to the facts, which reads as follows:

"(1)   That the instrument in writing which on January 31, 1938, was by the county court of Red River county, Texas, admitted to probate as the holographic will of W. L. Dodd, deceased, and afterwards upon the record of said court admitted to probate by the Jackson probate court, a photographic copy of which was exhibited to the depositions of Mrs. Margarte E. Boatner, and appears in the record in three parts as exhibits 2,

3, and 4, (and which by reference is made a part thereof) is not in the handwriting of W. L. Dodd, deceased.

"(2) That the signature of the testator to said will is not the signature of W. L. Dodd, deceased; that the names of William Ramsey and A. C. Tisdale on said purported will are not the signature of either of said witnesses.

"(3) That the above-mentioned will was on the 31st day of January, 1938, admitted to probate by the county court of Red River county, Texas, as a holographic will.

"(4) That a certified copy of the will and the order of probate of the same will were admitted to probate in Jackson county, Arkansas, on the 29th day of June, 1939, and a copy of said proceedings is attached to the complaint of the plaintiffs herein, and shall be considered in evidence without formal introduction.

"(5) That the typewritten instrument which was introduced in evidence as Exhibit '1' to the depositions of W. W. Metcalfe, and which by reference is made a part hereof, and of which the instrument admitted to probate is in words and figures a true copy, bears the genuine signatures of W. L. Dodd, deceased, as testator and of A. C. Tisdale and of William Ramsey as attesting witnesses.

"(6) Being entered into for the purpose of dispensing with further evidence as to the genuineness of said instruments these stipulations shall not be construed as a waiver by the plaintiffs of their objections to the jurisdiction of the court to determine the validity of the judgment of the Jackson probate court admitting said instrument to probate and record, or to the competency of the evidence offered to impeach the same in this or any subsequent proceedings, and the stipulations shall in no wise be considered as a waiver of any objection to the introduction in evidence of the instrument named in paragraph five thereof, and shall not be considered as an admission on the part of the plaintiffs that the said handwritten instrument was offered for probate in bad faith or with fraudulent intent."

The undisputed testimony is that the Holdens paid a fair price for the land and bought it in entire good faith upon the opinions of attorneys who had approved the title, as shown by the abstract thereof, and that D. P. Dodd received one-third of the purchase money, to which he would have been entitled if W. L. Dodd had died intestate. Ruth Dodd, the administratrix in succession, was advised of and assisted in the negotiations for the sale of the lands and, as a means to that end, made a final report of her administration and received her discharge, although she testified that "My father always left the impression that he knew there was a will and had tried to find it, but couldn't" and that she told one of the Holdens that she believed there was a will and if it was ever found she would probate it. The Holdens denied having been told anything about the will until after they had bought the land, and one of them testified that the filing of this suit gave him his first knowledge of this claim. There was no testimony that Alice had any part in the negotiations or had any knowledge of the will.

It is first insisted that the order of the probate court of Texas admitting the will to probate in that state is binding upon the courts of this state under § 14534, Pope's Digest, which authorizes the probate in this state of the will of a nonresident by filing in this state a copy of the record of the foreign state admitting the will to probate where a copy of these proceedings authenticated as required by the Act of Congress pursuant to § 1, art. 4, of the federal constitution, commonly referred to as the "full faith and credit clause" of that instrument, is filed in this state.

We do not agree. We have many cases dealing with the enforcement of judgments of other states, one of the most recent of which is that of *Motsinger* v. *Walker, ante,* p. 236, 168 S. W. 2d 385, where it was held that a foreign judgment when sued upon in this state might be attacked upon the ground that the judgment had been obtained by fraud practiced upon the court rendering the judgment or that the court lacked jurisdiction to render the judgment. The case of *Levin* v. *Gladstein,* 32 L. R. A.,

N. S., 905, has an extended note on this subject citing many cases supporting that view.

In the case of *Selle* v. *Rapp,* 143 Ark. 192, 220 S. W. 661, 13 A. L. R. 494, the trial court held that under the full faith and credit clause of the federal constitution a will probated in a foreign state could not be contested when offered for ancillary probate in this state. That holding was reversed, it being held by this court in that case that the will might be contested in this state, nothwithstanding its probate in another state, upon the grounds that the testator lacked testamentary capacity, or that the execution of the will had been procured by undue influence exercised upon the testator.

In the chapter on Conflict of Laws, 11 Am. Jur., § 178, it is said: "There is some conflict of authority as to the conclusive effect in one state of a decree of another state probating a will. In some cases this is due to the construction placed on statutory provisions, in others to the determination of the question of domicil, and in still others to the kind of property affected. It is clear that a decree of the other state has no extraterritorial effect if the court had no jurisdiction or if the probate was obtained by fraud. The general principle is well settled that the full faith and credit clause of the federal constitution does not preclude an inquiry into the jurisdiction of the court rendering the judgment or decree."

Now, it appears to us, and we find the fact to be, as did the court below, that the probate of this will in Texas was procured by fraud practiced upon the court. It must be remembered that the proceeding in Texas was not one to prove and probate a will which had been lost or destroyed, but was one to probate a holographic will, and testimony which was false, and must have been known to be false, was offered as to the genuineness of the signatures of the testator and those of the attesting witnesses, whereas, none of those signatures was genuine. Such a proceeding may not be condoned by saying that an innocent mistake was made and no injury was done because it is stipulated that the will probated is an exact

copy of the will having the genuine signatures of the testator and the attesting witnesses. The case of *Boynton* v. *Ashabranner*, 75 Ark. 415, 88 S. W. 566, affords full authority for holding that the order of the Texas court was obtained through fraud practiced upon the court.

That case was a collateral attack upon a decree confirming a tax sale which was rendered upon the finding recited in the confirmation decree that the petitioner for the confirmation decree had paid the taxes required by law to obtain the decree and had made proof of that fact by exhibiting receipts for the taxes which he claimed to have paid. In discussing what constitutes a fraud practiced upon the court in procuring a decree it was there said.

"For instance, if it were affirmatively shown that the petitioner or his attorney falsely represented to the court that he had filed true copies of the tax receipts for those years with his petition and exhibited in open court the original receipts, when in fact he had no such receipts, and had not paid the taxes for those years, and by those means induced the chancellor to pronounce the decree of confirmation, then that would constitute such a fraud in the procurement of the decree as would warrant a cancellation of it."

It is to be remembered that this is something more than a case where a judgment was rendered upon false testimony. The right of appellants to the relief which they pray was and is dependent upon the facts (a) that there was a will, and (b) that the will had been probated. Ruth Dodd presented for probate a will which she represented and testified was a holographic will when it was not.

The probate of this will was an *ex parte,* and not an adversary, proceeding, and a thing was done which made it possible to commit a fraud upon innocent persons at a later date who had no part in the probate of the will. Suppose the will probated was in fact a forged will and its probate had been procured by false testimony as to its genuineness. Could there be any question that this was a fraud committed upon the court and, if so, would

it be any less a fraud to probate the will as a holographic will when it was not such a will? If this was not a fraud practiced upon the court, it would be difficult to imagine what it would take to constitute a fraud.

It was held by the Supreme Court of Georgia, in the case of *Godwin* v. *Godwin,* 129 Ga. 67, 58 S. E. 652, that there is no law for probating a copy of a will, except where the will has been lost or destroyed, after the death of the testator or without his consent.

It is argued that even though it were conceded, and that concession is not made, that a fraud was practiced upon the court yet this was harmless for the reason that it is stipulated that the typewritten instrument offered in evidence bears the genuine signatures of the testator and the attesting witnesses and is an exact copy of the will actually probated. But this is the extent of the stipulation, and it was not stipulated that there had been a valid probate of the will in Texas. The decree from which is this appeal is predicated upon the finding that there had been no valid probate of the will in Texas because of the fraud practiced upon the court in procuring the order of that court admitting the will to probate.

It is argued that appellees may not question in this proceeding the validity of the order of the Texas court, nor that of the probate court of Jackson county, for the reason that even after this suit was instituted time remained within which an appeal might have been prosecuted from the orders of the Texas court, or that of the Jackson county probate court, or from both of them, and having this remedy at law they will not be permitted to pursue a different remedy in equity.

We think, however, appellees were not required to resort to this circuity of action. It must be remembered that appellants here, plaintiffs below, are in a forum of their own selection and are seeking relief which can be afforded only upon the assumption that they have title to the land in question under the will of their grandfather, W. L. Dodd. But, before obtaining that relief in any court, they must first show there was such a will and further that it has been probated. Moreover, it is

to be remembered that this proceeding is in equity and that equity has jurisdiction to set aside the probate of a will where fraud was practiced upon the court in obtaining the probate thereof. *Gray* v. *Parks,* 94 Ark. 39, 129 S. W. 1023.

Appellants say the court below was in error in refusing to admit in evidence and to consider the typewritten will as a muniment of title, inasmuch as it was stipulated that that instrument bore the genuine signatures of the testator and those of the attesting witnesses, or, stated otherwise, the contention is that an unprobated will may be offered in evidence where proof is required that the testator had executed the will and that the execution had been properly attested, and the following decisions of this court are cited to sustain that contention: *Campbell* v. *Garven,* 5 Ark. 485; *James* v. *Williams,* 31 Ark. 175; *Arrington* v. *McLemore,* 33 Ark. 759; *Turley* v. *Evins,* 109 Ark. 115, 158 S. W. 1080; *Cole* v. *Shelton,* 169 Ark. 695, 276 S. W. 993, 43 A. L. R. 1008; *St. Joseph's Convent of Mercy* v. *Garner,* 66 Ark. 623; 53 S. W. 298.

Except for the case of *Arrington* v. *McLemore, supra,* this holding is more apparent than real, and in the Arrington case proceedings were pending in the probate court to probate the will.

Except for these, we are cited to no case holding that an unprobated will may be offered in evidence as a muniment of title, and appellees have cited cases from twenty-one states holding to the contrary. We have made no inquiry as to whether there are others. In 28 R. C. L., p. 357, Chapter on Wills, it is said that: ''It is, however, now the general rule that a will cannot be given in evidence as the foundation of a right or title, unless it has been duly probated.''

In Vol. II, Thompson on Wills, chapter entitled Probate of Wills, § 187, it is said that: ''Until a will is duly probated the courts will not recognize, in an action, any powers of a person named in the will as executor, nor any title of a devisee or legatee under the will. The will is wholly ineffectual as an instrument of title until it is duly probated, and until this is done it can not be

used in evidence either in law or equity, to establish title to either real estate or personal property.''

Among other cases cited to support this text is our own case of *Bob alias Robert Crow* v. *Powers,* 19 Ark. 424, in which case a headnote reads as follows: ''An instrument of writing to take effect at the death of the grantor, cannot be received as evidence of a testamentary disposition of property in this state, unless it be regularly established and recorded as such in the probate court.''

In 2 Page on Wills, § 566; 2 Schouler on Wills, § 824, and 5 Nichols Applied Evidence, p. 179, the same rule is stated.

We are not required, nor, for that matter, are we permitted, to go beyond our own statutes on the subject which must govern our decision of this question. Section 14531, Pope's Digest, reads as follows: ''No will shall be received in evidence until it has been allowed and admitted to record by a court of probate and its probate before such court shall be conclusive, until the same is superseded, reversed or amended.''

The following § (14532) reads as follows: ''Every will so proved, recorded and signed by the clerk of the court of probate, and attested by his seal of office, may be read as evidence without any further proof thereof.''

The door to fraud would be opened wide if one in possession of a will could conceal it, when it was to his interest to have it suppressed, or might produce it when its production would serve his interests.

The court below dismissed the complaint of Ruth Dodd and Alice Dodd Henley, her sister, as being without equity for the reason that there was no competent or sufficient proof of the will of W. L. Dodd, their grandfather, inasmuch as the order of the Texas court admitting the will to probate had been procured through a fraud practiced upon that court. That decree conforms to the views here expressed, and it will, therefore, be affirmed, and it is so ordered.

McFADDIN and KNOX, JJ., nonparticipating.

ROBINS, J., dissenting. These facts are undisputed: That W. L. Dodd, grandfather of appellants, Ruth Dodd and Alice Dodd Henley, died seized and possessed of the lands involved in this suit; that at the time of his death said W. L. Dodd was a resident of Red River county, Texas, and that an instrument was admitted to probate as his last will and testament by the probate court of that county, which, under the laws of Texas, was the proper tribunal; that upon a duly certified copy of said last will and testament and of the order of the Texas court admitting it to probate being filed, this will was admitted to probate by proper proceedings in the probate court of Jackson county, Arkansas, where are situated the lands involved herein; that in the proceedings by which the will was probated in Texas the original will was not presented to the court, but an identical copy of same was filed; that a last will and testament, of which the instrument probated was an exact copy, was signed by W. L. Dodd and properly witnessed by A. C. Tisdale and William Ramsey; that when this suit was filed the time for appealing from the order of the Texas court admitting the will to probate and from the order admitting the will to probate in Jackson county, Arkansas, had not expired; that no appeal from either of said orders was taken; that, under the terms of this will, an undivided one-third interest in the lands involved herein was devised to D. P. Dodd, father of appellants, for life and the remainder in fee to appellants; and that appellants have never conveyed their interest in said lands. The lower court found that neither of these daughters of D. P. Dodd, appellants herein, was estopped to claim their interest in the lands by any act on their part, and this finding is not contrary to the weight of the evidence.

The sole ground upon which these appellants are being deprived of the property which their grandfather owned and devised to them is that the order of the Texas court probating this will was obtained by fraud.

Fraud is never presumed, but must always be proved. *Hembey* v. *Cornelius,* 182 Ark. 417, 31 S. W. 2d 539; *U. S. Ozone Co.* v. *Morrilton Ice Co.,* 186 Ark. 485, 54 S. W. 2d 282; *Wasson* v. *Lightle,* 188 Ark. 440, 66 S. W.

2d 652; *Browning* v. *Tevis*, 188 Ark. 1167, 69 S. W. 2d 284; *Brummitt* v. *Wilmans*, 189 Ark. 1171, 70 S. W. 2d 841.

What was the fraud sufficient to justify a chancery court in Arkansas in setting aside a solemn judgment of a court of competent jurisdiction of a sister state to which, under the constitution of the United States, courts of all other states must give full faith and credit?

According to the majority opinion herein the fraud proved in the case at bar consisted of this and only this: That instead of the original will of Dodd being presented to the probate court in Texas there was presented to the court an identical copy of the original will. There was no proof in this case that this will was copied or that the copy instead of the original was presented to the court with any sinister intention. In fact, commonsense dictates that no improper motive could have actuated the proponents in filing the copy instead of the original will. The same result was obtained by the use of the copy as would have been obtained by the use of the original. No possible harm could have resulted to anyone by the use of this identical copy instead of the original will. "In equity as well as at law fraud and injury must concur to furnish ground for judicial action; . . ." *Irons* v. *Reyburn*, 11 Ark. (6 Eng.) 378. "Fraud or deceit without injury is not actionable, . . ." *McCombs* v. *Mansfield*, 194 Ark. 208, 106 S. W. 2d 579.

But assuming, for the sake of argument, that this copy of the will was a false, fraudulent or forged instrument, this would not be sufficient to set aside, in a collateral proceeding, the judgment of the Texas court admitting the will to probate. In Black, Law of Judgments, vol. 1, p. 445, the rule is thus stated: "A judgment is not generally open to collateral attack because based on a fraudulent instrument or on perjured testimony."

"The fraud for which a judgment may be vacated or enjoined in equity must be in the procurement of the judgment. If the cause of action is vitiated by fraud, this is a defense which must be interposed, and unless its interposition is prevented by fraud, it cannot be asserted against the judgment; 'for judgments are impeachable

for those frauds only which are extrinsic to the merits of the case, and by which the court has been imposed upon or misled into a false judgment. They are not impeachable for frauds relating to the merits between the parties. All mistakes and errors must be corrected from within by motion for a new trial, or to reopen the judgment, or by appeal. 'The fraud must be 'in some matter other than the issue in controversy in the action.'

The rule that fraud, to be a ground for relief, must be extrinsic or collateral to the matter tried in the first action, is almost universally acquiesced in. It is merely an application of the general principle that equity will not interfere simply to give a second opportunity to relitigate that which has already been fully litigated. Extrinsic fraud has been defined to be 'actual fraud, such that there is on the part of the person chargeable with it *malus animus*, the *mala mens,* putting itself in motion and acting in order to take an undue advantage of some other person for the purpose of actually and knowingly defrauding him.' Extrinsic or collateral fraud operates not upon matters pertaining to the judgment itself, but relates to the manner in which it is procured.

The oft-quoted statement of Justice Miller in the leading Throckmorton case, illustrates and shows the rationale of the rule, though of course it does not exhaust the situations which may justify equitable intervention. 'Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently and without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side—these and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree and open the case for a new and fair hearing.' '' Freeman, on Judgments, § 1233.

In the case of *Turley* v. *Owen,* 188 Ark. 1067, 69 S. W. 2d 882, the court said: "In *Cassady* v. *Norris,* 118 Ark. 449, 177 S. W. 10, quoting from the seventh head-note, we held: 'Fraud as the basis of an action to impeach a judgment, must be a fraud extrinsic of the matter tried in the cause; it must not consist of any false or fraudulent act or testimony, the truth of which was or might have been in issue in the proceeding before the court which resulted in the judgment that is assailed; it must be a fraud practiced upon the court in the procurement of the judgment.' In 15 R. C. L., p. 762, the rule is stated thus: 'The acts for which a court of equity may, on account of fraud, set aside or annul a judgment at law between the same parties have relationship only to fraud which is extrinsic or collateral to the matter tried by the first court, and not to fraud in the matter on which the judgment was rendered.' In the case of *United States* v. *Throckmorton,* 98 U. S. 61, 25 L. Ed. 93, the Supreme Court of the United States had under consideration a petition which sought to set aside and vacate a previous order and judgment, because based upon an instrument in writing which was falsely and fraudulently executed. The court stated the rule as follows: 'That the mischief of retrying every case in which the judgment or decree rendered on false testimony given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases.' Thus it appears that practically all the authorities agree that judgments will not be set aside and vacated merely because they were superinduced by false testimony or *based upon false, fraudulent or forged instruments.*" (Italics supplied.)

Other Arkansas decisions in which the rule that fraud which would permit the setting aside of a judgment on collateral attack must be extrinsic and must relate to the procurement of the judgment are *Burbridge* v. *Gotsch,* 107 Ark. 136, 154 S. W. 200; *Reeves* v. *Conger,* 103 Ark. 446, 147 S. W. 438; *Hall* v. *Cox,* 104 Ark. 303,

149 S. W. 80; *Holland* v. *Wait,* 191 Ark. 405, 86 S. W. 2d 415; *Baker* v. *State,* 201 Ark. 652, 147 S. W. 2d 17; *Kersh Lake Drainage District* v. *Johnson,* 203 Ark. 315, 157 S. W. 2d 39.

While some of the language of the opinion in the case of *Boynton* v. *Ashabranner,* 75 Ark. 415, 88 S. W. 566, 1011, 91 S. W. 20, cited in the majority opinion in the case at bar, might be said to lend faint support to the holding of the majority, an examination of that opinion will disclose that the language referred to was *obiter dicta.* The gist of that opinion is contained in the following excerpt: ''The court had the power to set aside the confirmation on proper showing that it was procured by fraud, but we do not think the proof adduced was sufficient to warrant it in this case. The defendant testified that he had paid the taxes for the three years preceding the confirmation, and exhibited his tax receipts, and it follows from that testimony that the petitioner for confirmation could not have paid the taxes for those years. But the confirmation decree recites the exhibition by the petitioner of tax receipts, and the court necessarily found before entering the decree that petitioner had paid the taxes. It is not sufficient to show now that that finding was erroneous because, in the absence of fraud, that finding is conclusive, and another trial of the question cannot be permitted. The court may have reached its conclusion upon false or incompetent testimony as to payment of taxes, yet that would not constitute grounds for reopening the question and trying it anew.''

In my opinion, there was not shown in this case any such fraud as would justify the vacating, by collateral proceeding, of the judgment of the probate court of Red River county, Texas, admitting W. L. Dodd's will to probate. I, therefore, respectfully dissent from the opinion of the majority.