CLAXTON v. MARTIN.

4-4661

Opinion delivered May 31, 1937.

150

*Oscar E. Ellis,* for appellant.

*Northcutt & Northcutt,* for appellees.

GRIFFIN SMITH, C. J.   On September 18, 1931, E. L. Cook, as Special Deputy Commissioner of Finance of the state of Missouri, in charge of the insolvent Bank of Moody, filed complaint in the Fulton chancery court, alleging that B. T. Claxton and Mary E. Claxton, in 1921, became indebted to J. F. Divers in the sum of $460, evidenced by a note secured by a mortgage on 80 acres of land, and that the Bank of Moody, in due course, became the owner of the note and mortgage.   The prayer was for judgment and foreclosure.   Answer was filed on April 12, 1932, but on October 31, 1931, six months before answer was filed, the court gave judgment on the note and decreed that the mortgaged property be foreclosed. On October 10, 1933, appellant filed an intervention, alleging that on November 9, 1929, he purchased the property described in the mortgage, paying B. T. and Mary E. Claxton $500 therefor.   He further alleged that at the time the transaction was consummated the mortgage executed in favor of Divers was more than five years old; that no credits had been indorsed on the record, and, therefore, the right to foreclose had been lost. He alleged, in an amendment to his intervention, that on March 26, 1934, he acquired title to the property by virtue of a redemption deed issued by the State Land Commissioner,

such deed having been issued under the provisions of act No. 2, approved January 8, 1934.

On October 13, 1936, R. M. Martin and H. O. Ray filed an answer to the intervention of appellant, alleging that, under authority of the Bank Commissioner for Missouri, the Bank of Moody sold the Divers note and mortgage at public auction, and that they became owners through purchase, such sale having been made August 4, 1934, and confirmed by the Commissioner ten days later. The court treated this pleading as a motion by Martin and Ray to be made parties to the suit.

For reversal of the decree appellant contends (1) that the chancellor erred in not holding that title was conveyed by the redemption deed; (2) that appellant should have prevailed by reason of the deed from B. T. and Mary E. Claxton, and (3) that appellees did not have an assignment of the judgment, and were not proper parties.

(1, 2)   The chancellor was right in holding that the redemption deed did not convey title to appellant, unless it can be said that the quitclaim deed from B. T. and Mary E. Claxton to appellant was effective. This document was filed of record October 13, 1931, more than a month after the foreclosure suit of the Special Bank Commissioner had been filed, and prior to appellant's intervention. In fact, the deed was recorded the same day the court rendered judgment and decree on the note and foreclosure, and appellant's intervention came two years later.

Appellant testified that he bought the land from his father, and that the purchase price was paid by a transfer of livestock. At the time the transaction is alleged to have occurred, appellant was between fifteen and sixteen years of age, and was living with his parents. Whether Mary E. Claxton signed the quitclaim deed of November 9, 1929, was an issue before the court. The chancellor asked Mrs. Claxton to sign her name in his presence, and upon comparing the signature appearing on the quitclaim deed with the signature submitted by the witness, he ruled that Mrs. Claxton did not sign the deed, and that the property involved was the homestead

of B. T. and Mary E. Claxton. B. T. Claxton, in response to the question, "Who signed your wife's name to that" (referring to the deed), replied: "She didn't, and I don't think I did." He stated, however, that each acknowledged it.

Appellant's testimony was somewhat vague. He first said that his mother signed the deed, but later admitted he did not know her signature, nor could he identify his father's handwriting. Asked if he knew anything about his father's suit, he said that he did not, but admitted that after it had been filed he knew it was pending. Whether this testimony related to the Cook foreclosure, or to some other action by the elder Claxton, is not clear. Appellant did not know who took acknowledgments to the deed, and had not seen it until after it had been recorded. He did not, personally, have the deed recorded, and "guessed" that his father did.

Since the deed was not recorded until the day judgment was rendered on Cook's complaint, and in the absence of information as to the adverse claim, no duty rested upon the plaintiff to make young Claxton a party to the suit. B. T. Claxton testified in the foreclosure suit, and the record does not disclose that the deed to appellant was an issue at that time.

In view of these circumstances, and a preponderance of the evidence, the chancellor was correct in finding that the attempted conveyance was not binding upon Cook, the original plaintiff, and that there were no outstanding equities on October 13, 1931, when judgment was rendered and foreclosure of the mortgage was decreed. *Morgan* v. *Kendrick,* 91 Ark. 394, 121 S. W. 278, 134 Am. St. Rep. 78. No appeal was taken from the judgment of October 13, 1931, and even though, as contended, the statute of limitations might have been interposed, it is now too late to complain.

The redemption deed to appellant conveyed only such interest as his father had in the property, and that interest had been foreclosed. Consequently, appellant took nothing thereby.

(3)   Appellant's objection to appellees' motion and intervention is without merit for the reason that he had no interest in the property.

Affirmed.