WHITTINGTON *v.* BECK.

4-5146

Opinion delivered July 11, 1938.

*Mann, Mann & McCulloch,* for appellant.

*Shafer & Gathings,* for appellees.

GRIFFIN SMITH, C. J. Complaint was filed in circuit court by J. O. E. Beck, Sr., praying that James R. Whittington be ejected from certain lands.

Title was delineated, pertinent conveyances being: Deed from Samuel C. Pierce and wife to Burton F. Williams, October 2, 1936; deed from Burton F. Williams and wife to J. O. E. Beck, November 7, 1936; quitclaim deed from Tri-County Drainage District to J. O. E. Beck, October 5, 1936; deed from the state of Arkansas to J. O. E. Beck "for forfeited lands sold under dated of September 15, 1936, for nonpayment of 1931 taxes." It was further alleged that the land forfeited to the state for 1926 taxes and that a deed was issued to S. G. Jones August 1, 1936, and that Jones and his wife conveyed said lands to Burton F. Williams September 24, 1936.

The complaint stated that James R. Whittington claimed the land by virtue of a quitclaim deed executed to him by the St. Francis Levee District, dated September 28, 1934; that in such deed it was recited that the land forfeited to the board for nonpayment of taxes for 1924, "the same having been described as the fractional northeast quarter of the southeast quarter of section seven, township six north, range six east, 10 acres, and the forfeiture having been in the name of S. C. Pierce. The consideration recited in the deed as having been paid was $45.65. But the plaintiff says that the forfeiture of the said land to the St. Francis Levee District . . . was void." Ten alleged reasons are advanced for avoidance of the levee board sale, the assignments concluding with an allegation that the time allowed for redemption under act 2 of the Second Extraordinary Session of the General Assembly for 1934 had not expired. The full 40 acres which made up the 10-acre tract and a 30-acre tract was not fractional.

There is this further allegation: "The said James R. Whittington and wife on the 21st day of September, 1936, conveyed to Burton F. Williams all of the southeast quarter of section seven [in question] except the ten acres for which this suit is brought, . . . and that the title vested in the said Burton F. Williams passed to the plaintiff herein under the deed above set out from the said Burton F. Williams and wife to this plaintiff."

Appellant filed a demurrer, and subsequently filed an answer and motion to transfer to equity, at the same time renewing the demurrer. In the answer it was alleged that on August 10, 1936, the plaintiff's immediate grantor, Burton F. Williams, entered into a contract with Whittington, under which Whittington was to sell the ten-acre tract to Williams. The agreement is entitled "Contract to Sell Land," and designates Whittington as the party of the first part, and Williams as the party of the second part. Essential features are: Agreement between the parties that Whittington was owner of the ten-acre tract, . . . "more particularly described by a deed from the St. Francis Levee Board." Terms of sale: $500, payable $10 upon signing contract, "receipt of which is hereby acknowledged," and balance upon delivery of deed. "The party of the first part agrees to assist in clearing up the title to this tract of land in any [way] possible, without incurring any expense to him, all expense of clearing the title to be borne by the party of the second part. The party of the second part agrees to pay the party of the first part the sum of $500 . . . on or before the first day of September, 1936; or to relinquish any claim he may have to the above described tract of land, under this agreement. The party of the second part agrees to try to clear the title to this tract of land by paying off the taxes and getting a quitclaim deed from S. G. Jones."

Burton F. Williams was made a party to the suit. The chancellor found . . . "that the answer of the defendant, James R. Whittington, is without equity, and that the plaintiffs, J. O. E. Beck and Burton F. Williams do have and recover of and from the defendants the property [described]. That the defendant, James R. Whittington, has expended in purchasing said land from the . . . Levee District . . . the sum of $45.65 and has paid levee taxes thereon for two years amounting to the sum of $5; that the total amount with interest thereon at 10 per cent. per annum to this date is $65.80, which sum the defendant is entitled to recover." A writ of possession was ordered.

It is argued by counsel that the decree is predicated upon the chancellor's finding that the description "fractional northeast quarter of the southeast quarter," etc., under which the ten-acre tract forfeited to the levee district, was too vague and uncertain to convey title. Appellees insist, however, that if it be held that the description under which the St. Francis Levee District sold was indefinite, it must also be held that the description under which the Tri-County Drainage District sold for the taxes of 1931 and 1932 in the name of S. G. Jones was void, the decree in that case showing that the property was advertised as "fractional."

It is our view that this suit must be determined by the contract entered into by Williams and Whittington August 10, 1936. In appellees' brief it is said: "The learned chancellor in the court below held that the contract between the parties was at an end when the purchaser elected not to purchase the land on September 1, 1936; that thereafter no obligation rested upon either of the parties arising out of the contract, and that appellees were free to proceed as they pleased respecting the title to the property. The contract being out of the case, the court then proceeded to consider and determine the title to the property."

Under this construction of the decree and the court's reason for its promulgation, which would render void both the title acquired by Whittington from the St. Francis Levee District and the title acquired through the Tri-County Drainage District, it must be assumed that effect was given to the deed from Samuel C. Pierce to Burton F. Williams of October 2, 1936, and the deed from S. G. Jones to Williams of September 24, 1936.

Therefore, the question is, Were appellees at liberty, in view of the contract of August 10, 1936, to proceed in the manner indicated?

Williams testified: "Prior to execution of the contract Mr. Whittington represented to me that he had levee board deed which was the best in the world, and that the only thing necessary to clear the title would be to get a quitclaim deed from S. G. Jones and the payment of

$130 drainage. tax. . . . After execution of the contract my attorney advised me not to buy the ten-acre tract. It was my attorney's opinion that Whittington did not have title. He also advised me to make a tender to Whittington of the amount of taxes that Whittington had paid the levee board and otherwise. He also advised me that it would be cheaper to pay him a little more and not enter into a suit. I authorized Joe Mosby to make Whittington a tender of $125 and some odd dollars; it was $75 plus whatever the amount was Whittington had invested, and I made him a tender of $250 on November 17, 1936. This was on the day that Mr. Runyan, representing Vaccaro-Grobmeyer Lumber Company, had the contract for Mr. Whittington to sign, whereby they were to build a house for Mr. Whittington on the ten acres in question. . . . The purchase of this land was made by J. O. E. Beck for my benefit. Mr. Beck was going to advance me the money to purchase the land, and the title was simply taken in his name as security. Subsequent to the date of a letter I wrote Mr. Whittington on August 27, 1936, I went by Mr. Whittington's house and told Mrs. Whittington some of the details, and wrote him a letter that same afternoon and mailed it to him at Helena. The first Saturday after August 27, 1936, I saw Mr. Whittington and told him that my lawyer advised me not to buy the place and I was unwilling to do so, and could not afford to buy it. Subsequently we had several conversations about it."

Whittington testified: "On August 10, 1936, which is the date of the contract between me and Burton F. Williams, I did not reside on the ten-acre tract in question because there was no house on it, but I did have a crop on that tract. Under the terms of the contract . . . I relied upon Mr. Williams to clear up any part of the title that he wanted done. I paid no further attention to it after this contract. I made a special trip over to Memphis to see Mr. Jones. That was in furtherance of the provision in the contract to assist Mr. Williams when I could. The letter from Mr. Williams to me, dated August 27, 1936, was received by me, and I

understood from this letter that he was making every effort to get the title cleared up so that he could carry out his part of the contract. At that time I did not know that the outstanding titles were being taken in the name of J. O. E. Beck. I went to Marion to pay my levee taxes and they told me that Mr. Beck had paid them. . . . Shortly after September 21, 1936, Mr. Williams came to see me one evening and I talked to him about carrying out his part of the contract to purchase, and asked him what he intended to do about it. He said 'I aint going to do anything.' He told me he was not going to take the ten-acre tract. . . . I was not advised at any time . . . [by] anyone that they were taking quitclaim deeds to this property with a view of affecting my title. . . . After this suit was instituted I built a four-room house on the tract in question and the house cost me around $553. I have paid for all of the material except a balance of $143.66.''

Appellee Williams was not a tenant in possession, and unless the contract of August 10th was in force, there was nothing to prevent him from purchasing outstanding titles. A purchaser in possession cannot assert a title acquired by him adverse to his vendor while he remains in possession under a sales contract.

But it is clear from the contract in the instant case that Williams knew of the title under which Whittington claimed—that is, he knew Whittington claimed through purchase from the levee district. It is true Williams says Whittington told him a levee board deed ''was the best deed in the world,'' but at most this was merely an expression of opinion. Certainly Williams knew the source of Whittington's title, and he agreed to purchase such as it was. Each party to the contract probably thought the title was good. Williams cured defects by procuring a deed from the original owner—Samuel C. Pierce, although such deed was not obtained until October 4, 1936. He also secured outstanding titles held by others, and acquired whatever value might attach to them.

To affirm this case it would be necessary to hold that the contract of August 10 was merely an option on the

part of Williams—that the expression . . . "agrees to pay $500 in the manner set out above, on or before the first day of September, 1936; or to relinquish any claim he may have to the above described tract of land, under this agreement"—contemplated that Williams might exercise his own discretion with respect to clearing the title prior to that time, and that, concluding not to pursue the subject-matter further, he might step aside after the first of September, relinquish his claim "under this agreement," and then proceed to assert claims otherwise acquired.

By express covenant Williams was . . . "to try to clear the title to this tract of land by paying off the taxes, and getting a quitclaim deed from S. G. Jones."

There is nothing in the record to show he could not have done this prior to September 1. On the contrary, it appears that Williams, after being advised by his attorney that Whittington's levee tax title was not good, concluded not to pay off the taxes and not to procure the quitclaim deed. This course of predetermined conduct did not justify Williams in waiting until September and then notifying appellant he would not do those things imposed as duties under the contract, his apparent purpose being to do the same thing in a manner he regarded as independent of the contract.

The decree is reversed and the cause remanded for further proceedings in accordance with the rights of the parties under the contract, as herein declared.