WALDON *v.* HOLLAND.

4-7160                                    175 S. W. 2d 570

Opinion delivered November 29, 1943.

*M. A. Matlock* and *Will Steel,* for appellant.

*Head & Shaver* and *Bert B. Larey,* for appellee.

McFADDIN, J. This appeal presents for answer the inescapable question whether Act No. 2 of the Special Session of the legislature in April, 1934, impairs the obligation of the contractual rights of the appellant. The chancery court held the act to be valid, and appellant challenges the decree.

## The Facts

D. A. Holland, appellee herein, purchased sixty acres of land in Miller county from D. J. Holland in 1923. There was a mistake in the section number in the deed, but we consider the mistake of no consequence since a correction deed was later obtained. The lands became vacant in 1926 and forfeited to the State for the taxes of 1928. The State confirmed its title by then existing statutory proceedings in the Miller chancery court in March, 1932; and on March 7, 1933, appellant, Waldon, paid the State $18 and received a donation certificate to the sixty acres. He immediately moved on the lands and has improved same, and is now, and has been ever since March, 1933, in full possession thereof.

The General Assembly of Arkansas, at the Special Session in April, 1934, passed Act No. 2, approved April 12, 1934 (see printed Acts of 1935, p. 1011); and under that act, D. A. Holland, as owner, redeemed the lands from the State on May 31, 1934, notwithstanding the intervening donation certificate to Waldon, as aforesaid. Holland demanded possession from Waldon, but never made any tender for improvements, and the State never returned the $18 to Waldon. In 1936, Waldon tendered final proof to the Land Commissioner and requested donation deed, but was informed of the redemption by Holland and was referred to the courts for redress.

In September, 1937, Waldon filed suit in the Miller chancery court against the State Land Commissioner and Holland, seeking to have the State Land Commissioner issue the donation deed and to cancel Holland's redemption as a cloud on Waldon's title. Holland answered and cross-complained, claiming Waldon's donation certificate void, and praying that Holland's title be quieted. Waldon then dismissed his complaint in the Miller chancery

court, and through a proceeding in the Pulaski chancery court, forced the State Land Commissioner to accept Waldon's proof and issue him a donation deed. Then, on Holland's cross-complaint in the Miller chancery court, Waldon pleaded the donation deed and the Pulaski chancery decree and the invalidity of Act No. 2 of the April, 1934, Special Session, and also other defenses.

After the filing of a number of pleadings by both sides and a transfer to the circuit court and a re-transfer to the chancery court, the case was finally heard in Miller chancery court and a decree rendered on January 8, 1943, holding that Holland duly redeemed under the said 1934 act, and that the donation certificate and the donation deed held by Waldon should be canceled as a cloud on Holland's title.

A number of interesting and involved questions are argued in the briefs, but the decision of the one question stated in the first sentence of this opinion renders it unnecessary to state or discuss any other questions. Waldon claims that Act No. 2 of the April, 1934, Special Session of the Arkansas Assembly, impairs his contractual rights, and to that extent, is therefore violative of the state and federal constitutions. Art. 2, § 17, of our state constitution provides: ". . . no . . . law impairing the obligation of contracts shall ever be passed." The corresponding section of the federal constitution is art. 1, § 10, which provides: "No State shall . . . pass any . . . law impairing the obligation of contracts." To determine whether the Act of 1934 impaired the obligation of the contract necessarily involves a discussion of: (1) Was the donation certificate a contract? (2) What was the law at the time the certificate was issued? (3) What was the said Act of 1934? (4) What effect did the Act of 1934 have on the previously existing law?

I. *Was the donation certificate a contract?* We have many times considered the rights of the holder of a donation certificate. A few of these cases are: *McCauley* v. *Six,* 40 Ark. 244; *Hagerman* v. *Moon,* 68 Ark. 279, 57 S. W. 935; *Snider* v. *Smith,* 75 Ark. 306, 87 S. W. 624; *McCracken* v. *Sisk,* 91 Ark. 452, 121 S. W. 725; *Wilson*

v. *Murray,* 188 Ark. 312, 66 S. W. 2d 622; *Wilkins* v. *Maggard,* 190 Ark. 532, 79 S. W. 2d 1003; *Young* v. *Pumphrey,* 191 Ark. 98, 83 S. W. 2d 84; and *Ware* v. *Dazey,* 201 Ark. 116, 144 S. W. 2d 463. In *McCracken* v. *Sisk, supra,* Mr. Justice FRAUENTHAL pointed out the similarity of our donation law to the United States homestead law (which may now be found in 43 U.S.C.A., Chap. 7), and used some of the homestead cases decided under the United States statute to aid in determining the status and right of the holder of a donation certificate. Among other cases which Mr. Justice FRAUENTHAL cited and discussed was that of *McCune* v. *Essig,* 122 Fed. 588 (affirmed in 199 U. S. 382, 26 S. Ct. 78, 50 L. Ed. 237) to the effect: "The estate granted to a homestead settler is granted on conditions precedent." 91 Ark. 452, 121 S. W. 726. In *Knapp* v. *Alexander-Edgar Lbr. Co.,* 237 U. S. 162, 35 S. Ct. 515, 59 L. Ed. 894, the United States Supreme Court, in considering the nature of an entryman's title under the homestead laws of the United States, said: "He has also an inchoate title, subject to be defeated only by failure on his part to comply with the requirements of the homestead law as to settlement and cultivation."

But there is no need to pursue the analogy between the homestead law of the United States and our donation statutes, because Mr. Justice BAKER, speaking for this court in *Young* v. *Pumphrey,* 191 Ark. 98, 83 S. W. 2d 84, said: "It perhaps may be safely said that the certificate of donation is a permit or right granted to the certificate holder to enter upon the land belonging to the State in order to make the improvements required by law." Thus, we have said the donation certificate was a "right granted . . . to enter . . . to make the improvements required by law."

At the time of the issuance of the donation certificate to appellant, the law pertaining to donation was found in §§ 6671 to 6695 of Crawford & Moses' Digest, and these same sections are now found in §§ 8636 to 8659 of Pope's Digest. The rights of the donee under his certificate are set forth in § 8640 of Pope's Digest, which provides that the State Land Commissioner shall issue to the donee a certificate, "which certificate shall further state that

if within three years from the date of actual settlement, (the donee resided) in a house habitable at all seasons of the year upon said land, (and) the applicant shall present proof in the manner hereinafter provided to the commissioner, he shall execute, under his hand and seal, the deed of the State to the donee, conveying all the right, title and interest of the State in and to the lands described in said certificate." (In *Ware* v. *Dazey*, 201 Ark. 116, 144 S. W. 2d 463, we held the residence period required of donees under § 8642 of Pope's Digest had been shortened to two years, but that point is immaterial to the question now considered.) The point we emphasize is that the State certified to appellant, Waldon, that it would issue its deed to Waldon if he performed certain conditions precedent. This certificate was certainly a contract to deliver a deed to the lands on condition precedent to be performed by Waldon. We may summarize by saying that while the donation certificate was not assignable or transferable, was not a present sale or conveyance of an estate, was not a present grant to be defeated on condition subsequent, still it was a certificate whereby, upon the donee promptly and faithfully fulfilling the conditions precedent, the State would thereafter convey to the donee the title which the State had in the lands at the date of the certificate. To that extent, it was a contract.

II. *What was the law at the time the certificate was issued?* The appellant received his certificate on March 7, 1933, and the law then existing became a part of his contract. *Smith* v. *Spillman*, 135 Ark. 279, 205 S. W. 107, 1 A. L. R. 136; *Wood* v. *Lovett*, 313 U. S. 362, 61 S. Ct. 983, 85 L. Ed. 1404; 16 C. J. S. 693; 12 Am. Jur. 14. What was said by Mr. Justice RIDDICK in *Snyder* v. *Smith supra*, about a donation deed applies also to a donation certificate, to-wit: "The force and effect of a donation deed is governed by the law in force at the time it was issued." In the previous section of this opinion we have discussed the law concerning the donation certificate. The law concerning redemption also became a part of the contract; as that law measures the respective rights herein. Section 6696, Crawford & Moses' Digest (§ 8666, Pope) gave to

persons under disability the unlimited right to redeem; but appellee was *sui juris* so far as this record discloses. Section 6741, Crawford & Moses' Digest (§ 8672, Pope) gave the landowner the right to redeem within two years after the forfeiture, and also the right for further redemption of lands "which had not been sold or otherwise disposed of by the State." But the execution of the donation certificate to appellant constituted a step by the State from which it could not recede. It was a disposition within the meaning of that statute, because the donation certificate was a contract, as shown in the previous section of this opinion. Appellee did not prove any defect in the tax proceeding under which the land forfeited to the state. So, we may summarize by saying that at the time the donation certificate was issued to appellant, there was no law in existence which gave appellee any further right to redeem.

III.  *What was the Act of 1934?*  The act under which the appellee claims the right to redeem was Act No. 2 of the April Special Session of 1934, approved April 12, 1934 (see printed Acts of 1935, p. 1011); and that act stated: "In the event donation of the land, or any part thereof, sought to be redeemed, has not been completed and a deed issued and delivered to the donee, then, upon payment to the Commissioner of State Lands, by the one seeking to redeem, of the donation certificate fee, in addition to the amount necessary to redeem such land from forfeiture, as provided herein, the Commissioner of State Lands shall permit said land to be redeemed and shall issue a certificate of redemption, as provided by law, and shall pay the donation certificate fee to the party entitled thereto.  No pending donation or entry shall bar redemption, and it shall be mandatory upon the Commissioner of State Lands to issue a certificate of redemption to the one applying therefor, and if the donee or entryman has any rights as to property by way of betterments made by the donee, he shall be remitted to the courts for the enforcement of his rights in said matter."

This act has only been cited in two reported cases, and neither is decisive of the question here.  They are:

*Casey* v. *Johnson*, 193 Ark. 177, 98 S. W. 2d 67; and *Helvering* v. *Nebraska Bridge Supply & Lumber Co.*, 115 Fed. 2d 288. But this Act No. 2 of the April Special Session of 1934 was very similar—in fact identical in the quoted language above—to Act No. 2 of the January Special Session of 1934 (approved January 8, 1934, and found on page 3 of the Acts of the Special Sessions of 1933-34); and the January act has been before this court in at least seven cases, being: *Young* v. *Pumphrey*, 191 Ark. 98, 83 S. W. 2d 84; *Claxton* v. *Martin*, 194 Ark. 149, 105 S. W. 2d 861; *Vandergrift* v. *Lowery*, 195 Ark. 257; 111 S. W. 2d 510; *Kunze* v. *Blackwood*, 195 Ark. 658, 113 S. W. 2d 705; *Whittington* v. *Beck*, 196 Ark. 517, 118 S. W. 2d 861; *Rodgers* v. *Massey*, 204 Ark. 225, 161 S. W. 2d 378; *Ragan* v. *Henson*, 192 Ark. 679, 94 S. W. 2d 117. The last two of these cited cases were actions where the donee sued in equity for his betterments; that is, the donee elected to recover his betterments rather than the land. In the last cited case this court specifically pointed out that the validity of that portion of Act No. 2 here involved was assumed, since no question regarding validity was raised by either party.

To summarize, we have never decided whether this act impaired the obligations of a contract, because the question has never been presented to us.

IV. *What effect did the Act of 1934 have on the previously existing law?* In *Wood* v. *Lovett*, 313 U. S. 362, 61 S. Ct. 983, 85 L. Ed. 1404, the Supreme Court of the United States had before it a situation somewhat similar to the case at bar. There, certain lands had forfeited to the State in 1933 for the taxes of 1932. By Act 142 of 1935 the Arkansas legislature declared certain ministerial acts and omissions to be mere irregularities or informalities not defeating a tax sale; and in 1936, while Act 142 of 1935 was in effect, Wood received a deed from the State for the said lands. By Act 264 of 1937, the legislature repealed Act 142 of 1935; and, then, Lovett, as grantee of the original landowner, brought suit to recover the lands, and sought to prove certain defects in the tax forfeiture. These defects would not have defeated the tax forfeiture under the 1935 act, but would under the 1937

act. The Supreme Court of the United States held that Act 142 of 1935 (the law existing at the time Wood received his deed from the State in 1936) was a part of the contract between the State and Wood, and that the act of 1937, in repealing the 1935 act, impaired the obligation of the contract which the State made with Wood when it issued him the deed. The Supreme Court of the United States cited the old case of *Fletcher* v. *Peck,* 6 Cranch 87, 3 L. Ed. 162, and stated that the law in existence at the time the State made the deed "regulating the acquirement by the State and the disposition by it of lands sold for delinquent taxes, constituted, in effect, an offer by the State to those who might become purchasers of such lands, and the protection it afforded to the title acquired by such purchasers . . . constituted a contract with him." And further, the court said: "The federal and state courts have held, with practical unanimity, that any substantial alteration by subsequent legislation of the rights of a purchaser at tax sale accruing to him under laws in force at the time of his purchase is void as impairing the obligation of contract."

Our own court has many times recognized this principle. In the case of *Smith* v. *Spillman,* 135 Ark. 279, 205 S. W. 107, 1 A. L. R. 136, lands were sold at a drainage district sale and bought by Smith in 1914. The sale was approved by the chancery court in November, 1915. Between the sale date and the approval, the legislature passed an act of 1915 which extended the time for redemption. The question was whether the 1915 act impaired the rights of the purchaser at the sale, and this court, speaking by Chief Justice McCulloch, said: "The law as it existed at the time of the sale controlled the rights of the parties, and . . . the legislature could not thereafter change it so as to affect existing rights." In 16 C. J. S. 723, in discussing laws impairing the obligations of a contract, the rule is stated: "A statute providing for a grant of lands by the State on the performance by the grantee of a condition precedent creates a contract with the party performing the condition, as, for example, by reclamation of swamp land, or by construction of a railroad, either in whole or in part; and the

legislature may not impair this contract by a subsequent act.'' To the same effect see annotations in 1 A. L. R. 43, 38 A. L. R. 229, and 89 A. L. R. 966.

The general statement of the law is admitted; the only difficulty is in the application of the general principle to the facts in the particular case. In the case at bar the impairment of the contract is both real and apparent. The State of Arkansas certified to appellant, Waldon, on March 7, 1933, when he received his donation certificate, that if he fulfilled the requirements of the law, then, upon proof thereof, the State would issue to him a deed to the lands. In other words, he was to receive both the land and all the improvements that he put on the land. He paid the State $18 for the donation certificate and went on the lands. Thereafter, by subsequent legislation (Act No. 2 of April, 1934, here involved) the State attempted to take from Waldon his right to receive the lands by merely returning the $18, and attempted to take from Waldon all of the actual improvements that he put on the land, and in lieu of said improvements, to remit him to a court to recover what might subsequently be found to be the value of his improvements. He was promised the right to obtain a home and a part of the earth's surface by the donation certificate; and then by the act of 1934, the previous promise was revoked, and in lieu thereof he was merely given the right to have a lawsuit. He bargained for a loaf of bread and the subsequent act of the legislature gave him only a stone. Certainly his rights were impaired by the subsequent legislation. The case of *Walker* v. *Ferguson,* 176 Ark. 625, 3 S. W. 2d 694, is not in point for the appellee, because in that case the act of the legislature extending the time for redemption was enacted before Walker purchased the lands from the improvement district. Here, Waldon's rights under his donation certificate came into existence before the act of 1934 was enacted.

Equity regards that as done which ought to have been done. 30 C. J. S., § 106, p. 513; 19 Am. Jur. 315, and West's Arkansas Digest ''Equity,'' § 57. When appellant, Waldon, completed the terms of his donation certificate and applied to the State Land Commissioner for a deed in

410

1936, his proof should have been accepted and the deed should have been issued. He later obtained that relief through some proceeding in the Pulaski chancery court. It is not necessary for us to consider the efficacy of that proceeding because Waldon obtained the merited relief, and we treat that as done which ought to have been done. Waldon received his donation deed from the Land Commissioner and has been in possession of the land continuously since 1933, and his title is superior to that of the appellee herein, and should be quieted.

It, therefore, follows that the decree of the chancery court is reversed, and this cause is remanded to the chancery court to enter a decree in accordance with this opinion.

SMITH and McHANEY, JJ., dissent.