SLINKARD v. CALDWELL.

4-7584                                    186 S. W. 2d 431

Opinion delivered April 2, 1945.

*C. T. Carpenter,* for appellant.

*Eugene Sloan* and *A. P. Patton,* for appellee.

ROBINS, J. This suit was filed in the chancery court on March 8, 1938, by appellees, Fred Caldwell and Mrs. Martha K. Carter, against appellants, C. S. Slinkard and his wife, Mrs. J. E. Slinkard, and against appellants, P. E. Moore and his wife, Mrs. P. E. Moore.

In their complaint appellees alleged that appellee, Caldwell, and appellants, C. S. Slinkard and his wife, Mrs. J. E. Slinkard, had, on January 15, 1934, entered into a written contract by which appellee, Caldwell, rented to said appellants the south half of the northeast quarter of section 32, township 16 north, range 3 east, in Greene county, Arkansas, with a provision that said appellants might buy the land for $700 and interest, payable in ten annual installments; that thereafter it was agreed between the parties that the contract should be one of sale, and subsequently appellee, Caldwell, conveyed the land and assigned the contract to appellee, Martha K. Carter; that there were two principal payments, with interest, due at the time the suit was filed; that in spite of a provision in said contract that appellants, C. S. Slinkard and J. E. Slinkard, should pay all taxes and should also pay up all back taxes on the land and prevent any third party from acquiring the land "through any default or tax forfeiture," the said C. S. Slinkard had permitted appellant, P. E. Moore, Slinkard's brother-in-law, to acquire by donation from the state the southwest quarter of the northeast quarter of said section 32; that the sale of this tract to the state was void and of no effect. Appellees prayed for decree in favor of appellee,

Martha K. Carter, for amount of past due installments of said purchase money, that the entire balance of said purchase money be declared a lien on the land, that the donation certificate acquired by appellant, P. E. Moore, for the southwest quarter of the northeast quarter of said section 32 and the tax forfeiture and sale to the state thereof be declared void, and that the land be sold to satisfy the lien of the purchase money judgment.

Appellants, C. S. Slinkard and Mrs. J. E. Slinkard, in their answer denied that there was any contract for the sale of the land as alleged by appellees, and alleged that they entered into a rent contract with appellee, Caldwell, and entered upon said land "on the implied guaranty that said Caldwell was the legal owner of, and had the lawful title to the land," but that when they learned that he was not the owner they so notified him and refused to pay rent or to purchase the land from him; they denied any collusion with Moore in the donation of one of the 40-acre tracts by him, and they denied that the sale to the state was void.

Appellant, Moore, and his wife filed no answer, but appeared in the trial and other proceedings by the same counsel who represented the Slinkards.

While appellant, C. S. Slinkard, did not by any pleading set up title to any part of the land in himself, appellees charged in an amendment to their complaint that he had obtained a tax deed from the state and also from a drainage district; and appellees prayed for cancellation of these deeds.

The original contract sued on and the amendment are set out below:

"This agreement made and entered into by and between Fred W. Caldwell, hereinafter called lessor, and C. S. Slinkard and J. E. Slinkard, his wife, hereinafter referred to as lessees, witnesseth:

"For and in consideration of the premises hereinafter set out the said lessor hereby leases to the said lessee the following described lands located in Greene

county, Arkansas, to-wit: south half of the northeast quarter of the northeast quarter of section thirty-two (32), township sixteen (16) north, range three (3) east, containing 80 acres, more or less.

"Lessees are to pay lessor one-fourth of cotton and one-third of all other crops grown on said land for the period covered by this lease, which period shall commence January 1, 1933, and continue from year to year as long as its terms have been complied with by the lessee for a period of ten years subject to termination as hereinafter provided.

"It is understood that there are no buildings located on said lands and the lessees intend to construct such buildings on said lands as they desire which shall be placed on said land at their own expense and free of any lien or claim by any third party.

"The lessees during the life of this agreement shall have the option to buy said land from the lessor and pay therefor the total sum of $700 which, if said option is exercised is to be paid in the following manner: $70 payment to be made on the principal November 1, 1934, plus interest on the $700 from January 1, 1934, until November 1, 1934, at the rate of six per cent. per annum, and shall make similar payment of $70 on the principal and the accrued interest on the balance remaining due on November 1 of each succeeding year thereafter until ten such payments have been made, or a total of $700, plus accrued interest at six per cent. thereon from January 1, 1934, until paid, interest being payable only on the unpaid portion of the principal and lessees shall have the right to pay more than the $70 annual payment at any time they may desire and prior to its due date.

"In the event lessees exercise their option and pay the cash payment herein provided then the lessor will release any claim or interest in and to the portion of the crop due him as rent for the year said payment is made but the lessor shall continue to be the owner of said lands and as such entitled to collect crop rents thereon as here-

inabove specified until the full purchase price as herein set out is paid.

"In addition to the payments above provided for lessees agree to pay all taxes due on said lands, both general and special, and are to pay up all back taxes and agree that they will protect the title to said lands from being acquired by a third party through any default or tax forfeiture.

"When and if said lessees pay the said $700 and accrued interest thereon to the lessor as herein provided then the lessor agrees to make and execute a quitclaim deed conveying interest in said property to the lessees, it being understood by all parties that the lessor does not warrant or guarantee the title to said lands in any sense and it is known by all parties that said lands are delinquent for taxes, both state and county, and drainage taxes at this time.

"Should the lessees after exercising their option to purchase said land fail to make the annual payment due as herein provided for a period of thirty days after it becomes due, then the lessor shall at his option have a right to declare this contract, both the rental and purchase features of it, canceled and of no further binding effect and shall be entitled to full and complete possession of said premises on January 1 following default in the payment on November 1 preceding, in which event it is agreed between the parties that the payments made constitute a reasonable sum for the rental of said premises for the period during which the lessees were in possession and had the use thereof and neither party shall be entitled to claim any further sums or damages from the other on account of said breach or failure to pay the amount due.

"In witness whereof, the parties have hereunto set their signatures in duplicate on this the 15 day of January, 1934.

"(Signed) Fred W. Caldwell, Lessor

"     C. S. Slinkard

"     J. E. Slinkard, Lessees

"Time has been extended on the notes so that the first one will be payable Nov. 1st, 1936, and each year thereafter for 10 years. I hereby endorse.

"(Signed)   Fred W. Caldwell."

Entries on back:

"Nov. 1st - 1934 Int. paid to date

"Int. paid to Nov. 1st, 1935.

"This agreement entered into by and between Fred W. Caldwell, called lessor, and C. S. Slinkard and J. E. Slinkard, his wife, hereinafter called lessees, witnesseth:

"The parties hereto entered into a rent contract with option to purchase under date of January 15, 1934, covering south half of northeast quarter of section thirty-two (32), township sixteen (16) north, range three (3) east, containing eighty acres, more or less, although in said original contract said land is erroneously described as south half of northeast quarter of *northeast* quarter of section thirty-two (32), but the parties had not heretofore discovered said error in said description and the correct description is as herein stated.

"The purpose of this amendment to said contract is to change and extend the time for making the payments under the purchase part of said contract. It is, therefore, by the parties agreed that the $700 to be paid for said land under said option to buy as set out in the original contract to which this agreement is attached and both contracts are to be read together as one shall be due and payable, as follows, to-wit: $70 due and payable Nov. 1, 1936, and similar payment of $70 due and payable on November 1 of each succeeding year until the total amounts to $700. All of said payments are evidenced by ten separate notes for $70 each of even date with this agreement and shall bear interest at the rate of six per cent. per annum from this date until paid, interest to be paid on each note annually, privilege being given to the lessee to pay any portion of said unpaid balance in advance at any time, interest to be computed only on the balance due. All notes are made payable on or before their due date.

404

"Except as expressly changed by the agreement heretofore set out, the original contract is to remain in full force and effect between the parties.

"In witness whereof, the parties have hereunto set their signatures in duplicate on this the 18th day of December, 1935.

" ........................................................, Lessor.

"(Signed) C. S. Slinkard, Lessees."

Appellee, Caldwell, testified that the provision requiring appellant, Slinkard, to pay all general and special taxes, and to pay up all back taxes and to "protect the title to said lands from being acquired by a third party through any default or tax forfeiture" was put in the contract because the land was delinquent when he (Caldwell) acquired the land from the bank commissioner; that Slinkard had never told him he wouldn't make the payments because he had learned that he (Caldwell) did not own the land.

Appellant, C. S. Slinkard, testified that he signed the contract dated January 15, 1934, but did not sign the one dated December 18, 1935; that he never agreed to purchase the land or made any payments thereon; that he knew nothing about the indorsements as to extension made by Caldwell; that he paid about $50 rent for 1934, and also paid rent for 1935: that he refused to pay rent for 1936 because he had bought the land from the state; (his deed from the state, conveying east "forty" to him, was dated July 30, 1936, and showed consideration of $40, and his deed from First Slough Drainage District showed consideration of $77.64 and was dated August 7, 1936); that he knew nothing about P. E. Moore donating the west "forty"; that he didn't know about the land being delinquent for taxes until during the first year he was occupying it; that he never called Caldwell's attention to the fact that the land was delinquent.

Appellant, P. E. Moore, testified that Slinkard had nothing to do with his donation of the land from the state; (Moore's deed from the state was dated January 8, 1940,

and was issued in compliance with donation certificate dated November 6, 1937, his deed from First Slough Drainage District was dated December 29, 1941, and recited consideration of $96.04).

The lower court, finding that appellants, C. S. Slinkard and J. E. Slinkard, had purchased the land from appellee, Caldwell, and owed $1,097.60, with interest, for purchase money thereof, rendered judgment against them for this amount, canceled the donation deed from the state to P. E. Moore, and ordered sale of all the land to satisfy the vendor's lien of appellee, Mrs. Martha K. Carter.

For reversal of the lower court's decree as to the land claimed by Slinkard, appellants argue that the contract was one of rent and not of sale, and that the exercise of the option to purchase must have been evidenced by writing; and that, the relation between Caldwell and Slinkard being that of landlord and tenant, Slinkard was not disabled by this relationship to buy the land from the state.

We do not deem it necessary to decide whether exercise of a written option to purchase land must be evidenced by a writing, because, if a writing to evidence the exercise of the option to buy by Slinkard was necessary, such writing may be found in the amendment to the contract, which the preponderance of the evidence shows was signed by Slinkard on December 18, 1935. But Slinkard's position in the case would not be altered even if it were held that the contract of sale was never put in force. Under the terms of the first contract, which he admits signing, he agreed to take necessary steps to prevent loss of title to the property by Caldwell as a result of any forfeiture for taxes occurring either before or after the execution of the contract. It was his duty under this contract, whether it was one for rent or one for the sale of the property, to redeem the land from the forfeiture for taxes of 1931. Instead of doing this, as he contracted to do, he bought the land from the state, taking title to himself. Following the maxim that equity

treats as done that which ought to have been done, the lower court properly treated this as a redemption of the land, inuring primarily to the benefit of Caldwell, and ultimately to Slinkard's benefit, in event he should avail himself of his right to buy the land. *Gainus* v. *Cannon,* 42 Ark. 503; *Lowe* v. *Walker,* 77 Ark. 103, 91 S. W. 22; *City of Malvern* v. *Young,* 205 Ark. 886, 171 S. W. 2d 470; *Waldon* v. *Holland,* 206 Ark. 401, 175 S. W. 2d 570.

It is earnestly insisted, on behalf of appellant Moore, that, regardless of any breach of duty or good faith by Slinkard, appellant Moore was not under any contractual duty to appellee Caldwell, and that his donation of the west forty acres was made in good faith and without any collusion with Slinkard. Appellant Moore did not assert his title by any pleading, and he made application to donate the land only about four months before this suit was filed. When the suit was filed a *lis pendens* notice was given, and Moore had constructive notice of appellees' claim at that time; so that most of the improvements on the land, which entitled Moore to his donation deed, were made after he had constructive notice of appellees' rights as to the land. Moore testified that he knew nothing about Caldwell's contract with Slinkard and there is very little, if any, direct proof of any concert of action between these parties in the donation of the land by Moore. However, this land, when Moore entered it for donation on November 6, 1937, was in the actual or constructive possession of Slinkard, either as vendee or as tenant of Caldwell. Certainly when Slinkard permitted Moore to take possession, as he had to do in order to donate the land, there was a breach of Slinkard's duty to Caldwell; and, when we consider that the parties were brothers-in-law and were living across the road from each other, we cannot say that the lower court's finding that Moore's act in entering the land for donation and Slinkard's act in permitting him to do so was collusive and in fraud of Caldwell's rights was against the weight of the testimony. *Renn* v. *Renn,* 207 Ark. 147, 179 S. W. 2d 657.

The decree of the lower court is affirmed.